THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOYLE HUTCHISON, Defendant-Appellant.

Third District   No. 76-425

Opinion filed December 30, 1977.

Ronald Hanna, of Hamm, Hanna, & O'Brien, of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant Doyle Hutchison was convicted of the crime of rape following a jury trial in the Circuit Court of Peoria County. He was sentenced to a term of not less than 7 years nor more than 30 years in the Illinois Department of Corrections.

On appeal defendant raises two issues: (1) Whether the State's failure to provide the defendant with a polygraph report containing substantially verbatim statements of the alleged victim deprived the defendant of due

process and violated Supreme Court Rule 412; and (2) Whether certain statements allegedly made by the defendant to the police officers during custodial interrogation of the defendant following his arrest were erroneously admitted into evidence by the trial court.

According to the evidence presented by the State, Doyle Hutchison raped Barbara McCoy on the evening of February 1, 1976, in her Oak Hill, Illinois, home. Although the evidence of some of the elements of the rape were contradicted by the conflicting stories of the victim and the defendant, ample evidence existed that the defendant was present at the McCoy residence on the night in question.

Defendant's theory of defense was twofold. First he claimed that no rape occurred because he did not actually attain penetration. Secondly, he attacked the victim's reputation based upon her admitted past lack of discretion in an extramarital affair.

After the report of the rape, two officers of the Illinois State Police went to the defendant's residence pursuing the victim's story that Doyle Hutchison, with whom she was marginally acquainted, was the man who had raped her. Defendant was taken outside to the squad car and his *Miranda* rights were allegedly read to him. At first he denied ever being present at the residence of the victim that evening. Upon further questioning he admitted forcing his way into Barbara McCoy's home, wrestling with her on the floor of the kitchen and tearing her clothing from her. In this respect his statement corroborated the victim's version. He also admitted that he attempted to have sexual intercourse with her, but was physically unable to do so.

Defendant argues that the trial court erred in admitting his inculpatory statement into evidence. At the trial the defendant objected to the original foundation evidence for his statement. The objection was sustained. In an attempt to lay a proper foundation for admission of the custodial statement the arresting officer testified that he read defendant his *Miranda* warnings from a card he carried on his person. Defendant again objected, this time to the officer reading the *Miranda* warnings from his card into the record as he did to defendant. The trial court sustained this objection also, as no proper foundation was laid for admitting the *Miranda* warning card into evidence. Thereafter the officer was allowed to testify from his memory as to the warnings given to defendant when he read them from his *Miranda* warning card. There was no objection even though he inadvertently omitted the admonition that if the defendant could not afford an attorney one would be appointed for him at no cost. The witness indicated that defendant verbally indicated he understood his rights.

■■ There is no record of any challenge at the trial court level to the voluntariness of defendant's statement. The two objections we set out above went only to the technical aspect of laying a proper foundation for

evidence. Defendant failed to raise the issue of the voluntariness of the statement at the trial. No motion to suppress the statement was ever filed. The defendant's objection to arresting officer reading from his *Miranda* warning card is not an objection to the voluntariness of his statement. (See *People v. Caldwell* (1968), 39 Ill. 2d 346, 236 N.E.2d 706; *People v. Griffin* (3d Dist. 1974), 23 Ill. App. 3d 461, 318 N.E.2d 671.) Additionally defendant did not raise the issue of the voluntariness of his custodial statement in either his original or amended motion for a new trial. (*People v. Guynn* (3d Dist. 1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) We believe, therefore, that the issue was waived on this appeal.

■■ Defendant also contends that error occurred when the State failed to supply him with a report containing the victim's verbatim statements at a polygraph examination. At the hearing on the motion for a new trial the court was first apprised of the fact that the State had not provided either of defendant's co-counsel with a copy of the polygraph report even though the defense had made a written motion for discovery pursuant to Supreme Court Rule 412. (Ill. Rev. Stat. 1975, ch. 110A, par. 412.) One of the defense attorneys admitted that he was aware of the victim's polygraph examination but did nothing to procure a court order to secure compliance with his discovery motion. The assistant State's Attorney who tried the case testified that her entire office file on the case was made available to defendant's other counsel but there was no positive evidence that the polygraph report was in the file. It is apparent from examining the record that the results of the polygraph test were orally provided to defense attorney Dentino by the prosecutor.

The law concerning the failure of the prosecutor to provide discovery to the defense was recently stated in *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40. There the Illinois Supreme Court stated in part that the requirements for the prosecution's suppression of evidence discoverable through Supreme Court Rule 412 to be reversible error are as follows:

(1) The defense must have requested the discovery;

(2) The evidence discoverable must have been favorable to the defendant; and

(3) The evidence discoverable must have been material.

Our supreme court cited the cases of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and *Moore v. Illinois* (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562, with approval and held that a violation of due process occurs when a prosecutor, regardless of motive, suppresses evidence which is material to the accused's guilt or innocence after there has been a request for production of the evidence. (*People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40.) The majority opinion in *Nichols* further rejected the argument that the defense counsel's

awareness of the evidence and failure to procure its production by court order amounted to a lack of suppression by the State. The State urges the same argument upon us in the present case. We have examined the cases of *People v. Smith* (1970), 46 Ill. 2d 430, 263 N.E.2d 860; *People v. Hudson* (1968), 38 Ill. 2d 616, 233 N.E.2d 403; and *People v. Nischt* (1961), 23 Ill. 2d 284, 178 N.E.2d 378, which are claimed to be supportive of the proposition that defense attorney's awareness of the existence of the evidence after he has requested discovery of it and the failure to compel through court order its production by the State is a waiver of the argument for appeal purposes. We are bound by the majority opinion in *Nichols* on this particular point and believe that even though the defendant's attorneys may have been aware of the polygraph examination and its results we could not allow a violation of an accused's due process rights to be dispensed with in such a summary fashion.

The verbatim statement of Barbara McCoy during the polygraph examination and the report thereon was not made a part of the record, but was attached to the appellant's brief as an exhibit. This verbatim statement of the victim was not inconsistent with any of her other statements including her trial testimony, and was actually corroborative of her story in detail. Applying the second two elements of the *Nichols* standard, we conclude that the victim's statement, which was part of the polygraph examination, was not favorable to the defendant. It is argued that the victim's admission therein to an extramarital affair and the identity of her male concubine could have been used by the defendant to attack her morality, and was therefore relevant on the issue of whether she consented to the intercourse. We disagree and believe that such additional evidence was merely cumulative. Cross-examination of the victim's husband revealed that the victim had sexual relations with someone not her husband while separated from her husband and living in Elmwood, Illinois. Any further effort, other than the victim's husband's admission to her prior infidelity, to attack her reputation in the community for chastity and morality by identifying her lover certainly could not have hurt her reputation any more than it already was in the eyes of the jury. In the recent case of *People v. Brooks* (3d Dist. 1976), 37 Ill. App. 3d 66, 344 N.E.2d 662, we held under similar circumstances that the State's failure to disclose discoverable material is not per se reversible error. There statements of witnesses not supplied to the defendant related solely to the identification of the defendant, and the witnesses testified at the trial that they could not identify the defendant. We decided that the error, if any, was harmless error. In the instant case the primary defense theory was that no penetration occurred or alternatively that the victim consented. Having concluded that the verbatim statement of the victim in the polygraph examination was not favorable to the defendant but

actually corroborative of her, we believe the jury's weighing of the credibility of the witnesses and rejection of defendant's theories of innocence by their guilty verdict should not be disturbed.

■■ Further we agree with the reasoning of the trial judge as expressed in his denial of defendant's amended motion for a new trial wherein he stated that the State did not violate the discovery rules because the defendant's attorneys were aware of the polygraph examination and received its results orally. The trial judge also stated that the failure to actually give the defense a physical copy of the written polygraph results was inadvertent on the part of the State and that the statements of the victim were not favorable to defendant, from which he concluded that no prejudice resulted. We believe the trial court did not abuse its discretion in denying defendant a new trial.

For the reasons stated the judgment of conviction of defendant for rape in the Circuit Court of Peoria County is affirmed.

Affirmed.

STENGEL, P. J., and ALLOY, J., concur.