THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CARSON JULIAN, Defendant-Appellant.

Second District    No. 79-187

Opinion filed September 30, 1980.

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was charged by information on July 5, 1978, with aggravated kidnapping (Ill. Rev. Stat. 1977, ch. 38, par. 10—2(a)(3)), attempt murder (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a)), and armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). He was found guilty by a jury on all three charges and received terms of 18 years each in the Department of Corrections for armed violence and attempt murder, and 15 years for aggravated kidnapping, all sentences to be served concurrently.

The defendant raises three issues on appeal: (1) whether he was denied the right to trial by a fair and impartial jury, (2) whether he was denied the right to the effective assistance of counsel, and (3) whether the conviction and sentence for attempt murder must be vacated because it is a lesser included offense of armed violence. As to the first two issues, we find the defendant was not so denied; as to the third issue, the conviction and sentence for attempt murder is hereby vacated.

The defendant did not testify at trial. The circumstances surrounding the offenses were given during the testimony of the victim, a 17-year-old high school girl, who had been acquainted with the defendant for about three years prior to the incident. The record disclosed she was driving home during the early morning hours of May 30, 1978, after a date, when the defendant drove his car ahead of hers and stopped. They talked briefly, and she agreed to go with him to his house to see his new car. She left her purse in her locked car and went with the defendant in his car to his house where they looked at his car and motorcycle. When she expressed a desire to go back to her car, the defendant drove her around for awhile before returning to where her car was parked. The defendant said he wanted to talk with her some more, so he got her purse from her car and then drove to a spot near a farm. After awhile, the defendant asked her if he could kiss her. She said no, and the defendant leaned over and stabbed her in the chest. She then either fell or was pushed out of the car onto the ground, and the defendant sat on top of her, stating she

should lie still and not talk so that he could think. He then got up and said he would take her to a hospital. Instead, he drove around for awhile telling her that he was sorry and that he did not mean to have stabbed her. He returned again to the spot where he had stabbed her, and got out of the car to think. After awhile, she got out of the car and told the defendant she was going to walk to find someone to help her, and promised not to tell anyone what had happened. As she began to walk away, the defendant stabbed her twice in the back. When she fell, he tried to stab her again and cut her neck. It was then that she first saw a portion of the knife, which was not found, but was described as a fish fillet knife. The defendant then removed the victim's pants, and inserted the knife into her vagina once. The victim testified she had her eyes closed and acted as though she were unconscious. The defendant then put her pants back on, and when he placed her in the trunk of his car, she asked him not to leave her there to die. He closed the trunk, drove awhile, stopped and got out, and then drove some more. The victim testified she then believed they stopped at a gas station because she could hear conversation with a man and heard sounds like gas entering the tank. The defendant drove again, stopped, got out, and the victim heard another car drive away. Later, something was being poured over the car which smelled to her like gasoline. The car was then driven around for quite awhile. When it stopped, the defendant opened the trunk, lifted the victim out, placed her on the ground, and stood over her for a minute or so. She pretended to be dead at that time. When defendant got back into the car and drove away, she got up and walked toward a light which she could see several hundred yards away. It was a house trailer located in Elburn, Illinois. The occupants summoned aid, and the victim was eventually taken to Mercy Center in Aurora, where she was hospitalized for a week. X-rays revealed a punctured lung, fluid in the lungs and two metallic fragments on the right side of her chest which the doctor concluded must have broken off the weapon used in the attack.

Defense counsel filed a pretrial motion to suppress a statement made by the defendant and a motion for change of venue. Hearings on both motions were held, and they were denied. Plea negotiations were unsuccessful, and the judge who had participated in them and had made the rulings on defendant's pretrial motions recused himself, and the case was assigned to another judge. Defense counsel then filed a motion for discharge on the basis that the defendant had not been brought to trial within the speedy trial term. The motion was denied, and the cause was set for trial.

■■ The defendant first claims he was denied his right to be tried by a fair and impartial jury because the judge failed to conduct a meaningful voir dire to ascertain the extent of the jurors' knowledge about the case as the

result of pretrial publicity and what effect, if any, such publicity may have had on their ability to be impartial. Defendant also claims he was denied the effective assistance of counsel in this regard due to his counsel's failure either to object to the court's method of examination or to probe the prospective jurors' bias himself when afforded the opportunity to do so. Although defendant filed a post-trial motion, no error in the voir dire proceedings was set forth therein, nor was any objection thereto made at trial. Thus, defendant may be held to have waived this issue on appeal. (*People v. Precup* (1978), 73 Ill. 2d 7; *People v. Pickett* (1973), 54 Ill. 2d 280.) Nonetheless, we have examined the record before us for the existence of any error which would amount to the plain error contemplated within the meaning of Supreme Court Rule 615(a) and, as indicated below, we find none. Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

■■■ During the hearing on defense counsel's earlier motion for a change of venue before the first judge, two Chicago and seven local newspaper clippings which appeared between May 30 and June 15, 1978, were produced. Most dealt with the report of the instant offenses, albeit rather inaccurately, and three of the later articles contained reports that the defendant had also been charged variously in two other counties with rape, attempted rape, battery and two counts of criminal trespass to land. It is not clear whether these articles were featured prominently in these papers, but at least two of the articles appeared on the obituary page. It is also unclear whether the trial judge was aware of the existence of these particular articles. During voir dire on November 27, 1978, the judge inquired of all the jurors whether they had read anything about the case and whether their ability to be impartial had been impaired thereby. Despite the leading nature of the judge's questions, and comments which emphatically conveyed to the jury that he would brook no trifling excuses for avoiding jury service, we do not find any error in the conduct of the voir dire. Although the judge did not inquire deeply as to what they recalled reading about the case, he did ascertain the jurors' present ability to be impartial, and excused a number of them for cause due to their acquaintance with either the parties, members of their families, or counsel. The judge also repeatedly admonished the jurors that they must only be influenced by the evidence adduced at trial. We recognize, as the trial judge did, that the mere fact a potential juror had read something about the case is not sufficient to rebut the presumption the juror will be impartial. It is sufficient, even when it is established the juror had a preconceived notion as to the accused's guilt or innocence, if the juror can lay aside that impression or opinion and render a verdict based on the evidence presented in court. (*Irvin v. Dowd* (1961), 366 U.S. 717, 722-23, 6 L. Ed. 2d 751, 756, 81 S. Ct. 1639, 1642-43; *People v. Speck* (1968), 41 Ill. 2d 177, 184. See also section 14 of "An Act concerning jurors, * * *" (Ill. Rev.

Stat. 1979, ch. 78, par. 14).) The determination of the impartiality of potential jurors rests within the sound discretion of the trial court (*People v. Johnson* (1976), 43 Ill. App. 3d 649), and we find no abuse of that discretion occurred during voir dire.

Taking all of the foregoing into account, as well as the several facts following, we also conclude the defendant was not denied the effective assistance of counsel in the conduct of the voir dire. Our conclusion is supported by the record, which reveals that defense counsel challenged several jurors for cause and, where such removal was denied, exercised a peremptory challenge. A total of five such peremptory challenges were used prior to the empaneling of the jury. We find nothing in the record to indicate that defense counsel was prevented in any way from exercising his remaining challenges nor any evidence that he should have used them. As pointed out in the State's brief, jury selection is a process which involves subtle, subjective personal reaction to the juror as a person, as well as objective evaluation of the juror's responses. We can only review the tangible record; we must defer to counsel on the subliminal perceptions. A review of counsel's competency will not be appraised on the basis of matters involving the exercise of judgment, discretion, or trial tactics. *People v. Greenlee* (1976), 44 Ill. App. 3d 536.

■■ The defendant next claims he was also denied the effective assistance of counsel because his counsel, who was privately retained, failed to offer any evidence in support of the theory of the defense and failed to make any closing argument in support of the theory of defense. The inadequacy of a defendant's trial counsel entitles him to a new trial if defendant's counsel was actually incompetent in the performance of duties at trial, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different. (*People v. Goerger* (1972), 52 Ill. 2d 403.) The standard by which counsel is measured is whether the representation is of such low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham. (*People v. Greer* (1980), 79 Ill. 2d 103; *People v. Murphy* (1978), 72 Ill. 2d 421.) Competency is determined from the totality of counsel's conduct at trial (*People v. Steel* (1972), 52 Ill. 2d 442), and errors in judgment or trial strategy do not establish incompetency. *People v. Torres* (1973), 54 Ill. 2d 384.

The apparent theory of defense was that the defendant was under the influence of drugs and was incapable of acting knowingly or intentionally. Defense counsel did not present any evidence in support of this theory, but on cross-examination questioned the victim as to whether she and the defendant had smoked marijuana on the night of the incident. She responded they had not, but stated that she did have marijuana in her purse. Later testimony in the record disclosed no marijuana was found in

the victim's purse, but a container with suspected marijuana was found in the defendant's car. No tests were performed on the victim to determine the presence of any drugs or other narcotics in her system. Further, there was no evidence that the substance taken from the defendant's car was in fact marijuana. The following instruction was offered by defense counsel and given to the jury by the court:

> "A drugged person is criminally responsible for his conduct unless his drugged condition renders him incapable of acting intentionally or knowingly."

Although the defendant testified at the sentencing hearing, and the report of the psychiatric evaluation of the defendant so indicated, he had used cocaine, angel dust, M.D.A., and marijuana on the date of the incident, there is nothing in the record which would indicate defense counsel had any actual proof to offer other than defendant's own statements, which likely would not have withstood the rigor of cross-examination. Counsel's best course of action under these circumstances was to do what he did: create as much doubt in the minds of the jury as possible without risking any chance of impeachment or contradiction. Quite likely this is also the reason counsel chose not to argue the theory to the jury in closing. By not arguing, counsel effectively avoided the risk that the State would destroy any vestige of the defense on rebuttal. We are cognizant of the many affirmative steps counsel took in defense of his client; to wit, the motion to suppress a statement, for change of venue, and for discharge, as well as participation in plea negotiations, all of which proved unsuccessful. We find counsel's representation of defendant was aggressive, and that the errors now asserted against him were in the nature of judgment and trial strategy which do not establish incompetency.

■■ Defendant's final claim that his conviction and sentence for attempt murder must be vacated since that offense was based on the same act as the armed violence is well taken, and is hereby vacated on the authority of *People v. King* (1977), 66 Ill. 2d 551, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, *People v. Myers* (1980), 83 Ill. App. 3d 1073, and *People v. Howard* (1979), 78 Ill. App. 3d 858.

The judgment and sentence of the circuit court of Kendall County for aggravated kidnapping and armed violence are affirmed; the judgment and sentence for attempt murder are vacated.

Affirmed in part; vacated in part.

LINDBERG and VAN DEUSEN, JJ., concur.