THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES HOFSTETTER, Defendant-Appellant.

Third District    No. 80-117

Opinion filed October 27, 1980.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the defendant, James Hofstetter, from his convictions for armed robbery and the unlawful use of weapons. As a result of a jury finding the defendant guilty of these offenses, he was sentenced to concurrent terms of imprisonment of 14 years for armed robbery and three years for the unlawful use of weapons. In his appeal, the defendant raises two issues: whether his right to due process was violated by the failure of the State to provide, as part of pretrial discovery, a police report which contained the fact that no identifiable fingerprints were discovered on the weapon used in the charged offenses; and whether,

because both offenses are carved from the same physical act or because unlawful use of weapons is a lesser included offense of armed robbery, the defendant's conviction for unlawful use of weapons must be vacated. A statement of the relevant facts follows:

On November 27, 1979, a two-count indictment was filed in the Circuit Court of Peoria County charging the defendant and his co-defendant, Daniel Giacinti, with armed robbery and unlawful use of weapons. Specifically, count I alleged that the defendant and Giacinti committed armed robbery in that they, while armed with a shotgun, took money from the person of James Ganion by threatening the imminent use of force. Count II charged unlawful use of weapons in that they knowingly possessed a shotgun with a barrel less than 18 inches in length.

On November 19, 1979, the defendant and Giacinti appeared in answer to the charges placed against them. The defendant was found to be indigent, and the public defender was appointed to represent him. He then entered a plea of not guilty and orally moved that the State furnish full discovery pursuant to Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412). The trial court ordered that the State furnish discovery to defendant within one week. The case against Giacinti was continued to allow private counsel additional time to appear.

On January 7, 1980, the case proceeded to trial as to defendant Hofstetter only. The State's evidence established that on November 13, 1979, Cathy Crookham, the defendant's fiancee, was out socially with a friend, Daniel Giacinti. Crookham and Giacinti went to her home to meet Crookham's roommate, Gail Bamber, and the defendant. There, Crookham introduced the defendant to Giacinti, both of whom spent that night at Crookham's home.

The next day, Bamber returned from work at 5:30 p.m. When Crookham left the apartment to get beer, the defendant's ex-wife called and said that she had seen the defendant's car, which had been stolen earlier that day. The defendant and Giacinti asked Bamber if they could borrow Crookham's car in order to retrieve the defendant's car. After Bamber gave them the keys, they left. Crookham testified that she did not have a sawed-off shotgun in her car.

James Ganion testified that at 7:30 p.m. on November 14, 1979, he was employed at the Clark gas station at Adams and MacArthur Streets in Peoria. A person, whom Ganion identified as Daniel Giacinti, came into the office. Giacinti reached into his coat and pulled out a previously hidden sawed-off shotgun. He pointed the weapon at Ganion and demanded money. Ganion gave him his bills, his changer, and money from the station's safe. Ganion then went to the back room at Giacinti's directions. Several minutes later, Ganion left the back room and, seeing that Giacinti was gone, called the police.

In the meantime, Daniel Cronin, who was driving past the Clark Station, looked inside and saw one man with his knee on the floor and another man wearing a parka. The man with his knee on the floor then went to the back room and the other man quickly left the station. Cronin knew that there was a drop safe on the floor of the station, so he became interested in what was happening.

Half a block away Cronin saw a brown car parked in an empty lot behind a building with its motor running and with a man in the driver's seat. Cronin observed the man with the parka, identified as Daniel Giacinti, run across the street in front of him. Both Cronin and Giacinti stopped. In the process, some money and cigarettes fell out of Giacinti's pocket, and he attempted to retrieve them. Cronin thought he saw Giacinti reaching for a pipe, so Cronin sped up. Turning, Cronin saw the passenger door on the brown car slam shut, and he followed the brown car through town.

When he saw police officer Dennis Galloway, Cronin informed Galloway that the men in the brown car had just robbed the Clark Station. Galloway sent a message out over the radio regarding the brown car, and he and Cronin returned to the spot where Giacinti had dropped the money and cigarettes. There, Galloway recovered $21 and a pack of cigarettes.

Officer Phillip Geier was in a marked squad car when he observed a late model brown car, which he later learned contained the defendant and Giacinti, run through a red light. Geier turned on his flashing lights and siren and pursued the car. During this pursuit the brown car ran through three more red lights.

While in pursuit of the brown car, Officer Geier's squad car was passed by several other squad cars. A car driven by Officer Gary Richter pulled alongside the brown car and forced it to the curb. All four squad cars in the chase pulled up, and the officers drew their guns and ordered the occupants out of the car. The driver was the defendant, and the other occupant was Giacinti. Inside the car, Officer Geier observed a .410 sawed-off shotgun partially under the front passenger seat.

Officer Michael Johnson testified that Giacinti's coat pocket contained $278.02 and three .410 shotgun shells. Engraved on the shotgun was the name "Dave Giasenti [sic]." The shotgun was taken to the police lab where it was fingerprinted by Officer Bennett and measured by Officer Johnson. The barrel was found to be 11 5/8 inches long.

The State's final witness, Officer Carl Severino, testified that he had a conversation with the defendant on November 14, 1979. After being advised of, and waiving, his rights to counsel and to remain silent, the defendant told Severino that he had been driving his girlfriend's car looking for his own car, which had been stolen earlier that day. While

stopped at a red light, a person whom the defendant had never seen before jumped into his passenger seat, pointed a sawed-off shotgun at him and told him to drive off. He also stated that while the police were chasing him, the man with the shotgun ordered him to drive faster. When Severino asked the defendant if he knew anyone named Daniel Giacinti, the defendant stated that he never heard of that person.

Following Severino's testimony, the State rested, and a motion by the defendant for a directed verdict was denied. Defense counsel then moved for a mistrial based on the failure of the State to provide complete discovery. The basis for this motion was the claim that Officer Johnson's testimony concerning the shotgun having been processed for fingerprints by Officer Bennett came as a total surprise. Nowhere in the discovery tendered by the State had that fact been mentioned.

The prosecutor stated that she was also not aware of that fact until Officer Johnson testified to it. She offered to contact Officer Bennett to determine whether fingerprints were found on the shotgun and to stipulate to the results of the test. The trial court denied the motion for mistrial, but offered to give the defense counsel whatever time he needed to contact Officer Bennett or other officers to pursue the matter further. Defense counsel stated that he did not believe that the court's ruling provided a proper remedy and objected to having the obligation to track down police officers while in the middle of the trial. Despite counsel's objections to the procedure, the court adjourned the proceedings at 2:15 p.m. to allow defense counsel to pursue the matter as he wished. Defense counsel indicated that he did not want a continuance because he could effectively argue to the jury the fact that the results of the fingerprinting were not in evidence and the State had the burden of proof.

The next morning, the prosecutor represented to the court that she had been in possession of a police report regarding the processing of evidence in the case, but was not aware of that fact when she made a contrary statement the day before. The prosecutor stated that she had received the police lab report on Monday, January 7, 1980, the first day of trial, but had not been aware that she had received it. Defense counsel responded that the fact remained that the police report had not been tendered to the defense in discovery, and counsel observed that, had he received the report prior to trial, he may have approached the case differently. Nevertheless, the defense counsel did, prior to this discussion, offer to withdraw the motion for mistrial, to which offer the trial court responded by pointing out that since the motion had already been denied, no motion was pending to withdraw.

The prosecutor stated that she had tendered the police report to defense counsel the afternoon of the previous day, and that the report indicated that no comparable fingerprints of anyone were found on the

shotgun. The prosecutor also stated that she would stipulate to the results contained in the report. Defense counsel, on the other hand, stated he would agree to a stipulation to the effect that the weapon was finger-printed and that the defendant's fingerprints were not found on the gun. The prosecutor replied that she would stipulate only to the fact that there were no prints of anyone's developed on the weapon. Failure of counsel to agree resulted in no stipulation being presented. The court then offered defendant time to get Officer Bennett in to testify, but defense counsel stated he wished to proceed with the case. The defense then rested without presenting evidence.

■■ In response to the defendant's argument that the State, by failing to comply with the discovery order, has violated the defendant's right to due process to such an extent that a reversal and remandment is required, the State contends that the defendant has waived this issue for purposes of review by reason of the defense counsel proceeding with trial after learning of the previously undisclosed report. In *People v. Myers* (1974), 20 Ill. App. 3d 83, 312 N.E.2d 471, defense counsel was considered to have waived, for the defendant, the issue of the State's noncompliance with a discovery order where it was stated for the record that the defense counsel had examined the recently produced documents and was pre-pared to continue with the trial. Based on the facts in the case at bar, it is evident that the defense counsel waived the issue here as well.

■■ In any event, the defendant's allegation of error has no merit. Before the failure of the State to provide discovery is considered reversible error, it must be demonstrated that the evidence discoverable was favorable to the defendant. (*People v. Hutchison* (1977), 55 Ill. App. 3d 716, 371 N.E.2d 201.) A test which discloses no latent prints of value on the shot-gun is neutral and could not have affected the verdict. *People v. Penland* (1978), 64 Ill. App. 3d 656, 381 N.E.2d 840.

■■ As for the second issue raised by the defendant, this precise issue has been considered in *People v. Heard* (1977), 53 Ill. App. 3d 1042, 369 N.E.2d 229. In *Heard*, as in this case, the defendant was found guilty of both armed robbery and unlawful use of weapons in that he knowingly carried or possessed a shotgun with a barrel of less than 18 inches in length. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2(a), 24—1(a)(7).) In the earlier case, it was concluded that unlawful use of weapons was not an included offense of armed robbery, nor did the crimes arise from the same conduct even though the acts were closely related in time and place. It seems clear that the added element of the unlawful use of weapons charge, that the particular weapon used was a shotgun with a short barrel, is not an element of armed robbery, and therefore, the unlawful use of weapons charge can not be an included offense of armed robbery in this case.

*Heard* is factually similar to the case at bar in that the defendant and his partner were arrested within minutes of the armed robbery. Therefore, a similar result ought, logically, to occur in this case.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.