THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES GLOVER-EL, a/k/a James Derrick Glover, Defendant-Appellant.

First District (4th Division)    No. 80-1377

Opinion filed December 10, 1981.—Rehearing denied January 7, 1982.

Ralph Ruebner and Phillip J. Zisook, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Kevin D. Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, James Glover-El, appeals his conviction for armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), raising the following issues for review: (1) whether the trial court erred in refusing to suppress a gun seized during a warrantless entry into his home; (2) whether the trial court erred in refusing to quash his arrest; (3) whether out-of-court identification following and evidence seized during his alleged illegal arrest should have been suppressed; (4) whether the Illinois search without warrant statute is unconstitutional; (5) whether he was denied a fair trial where the

State failed to provide prior statements of his co-defendant; (6) whether the trial court erred by allowing the State to amend the indictment so as to substitute the name of one complainant for another; (7) whether he was proved guilty beyond a reasonable doubt where the accomplice witness was a narcotics addict; (8) whether he was denied the right to effective assistance of counsel; and (9) whether remarks by the prosecution in closing argument were prejudicial.

We affirm.

On the evening of June 13, 1979, a robbery occurred at the Super X Food and Liquor Store on 83d and Racine in Chicago. LeRoy Weathers, a security guard authorized to carry a gun, testified that he had stopped in the store on his way to work. While there, a man put a gun to Weathers' head, took his gun and told him to jump over a counter and lie flat on his face behind it. Someone took Weathers' identification and his money. Several days later, Weathers identified Frederick Brown in a lineup as the man who had placed the gun to his head.

Terris Motten, manager of the Super X store, testified that on the evening of June 13, 1979, at around 10:50, he was waiting on Weathers when a man walked into the store, pulled out a gun and placed it against Weathers' head. After the man instructed Motten to lie down behind the counter, someone searched Motten, taking his wallet with his driver's license, cash and keys. Two hundred dollars was taken from the cash register. Several days later, Motten identified Frederick Brown in a lineup as the man who had pulled out the gun.

Frederick Woods testified that he walked into the liquor store while the robbery was in progress. A man at the cash register pointed a gun at Woods, told him it was a "stickup" and that Woods should go into the back room. The man with the gun was Frederick Brown, according to the witness. As Woods walked the 30 feet to the back room, he saw another man with a gun whom he identified in court as defendant Glover-El. The latter took Woods' money. Woods testified that on the night in question the lights in the store were bright. Woods identified defendant Glover-El in a lineup on June 20, 1979.

Frederick Brown, the State's accomplice witness, testified that he intended to plead guilty to the charge of armed robbery at the Super X store in exchange for leniency. He stated that on the evening of June 13, he, Michael Jordan, and defendant robbed the liquor store. Brown's testimony corroborated the accounts of the robbery given by the victims.

Before trial, a hearing was held on a motion to quash arrest and suppress evidence. The following was established.

On the evening of June 16, 1979, Chicago police received a teletype message from Wisconsin police. A parent had reported that his 15-year-old daughter was missing, that she was being held against her will at 6337

South Wood in Chicago, and that she had been raped several times. The message requested that Chicago police check to see whether the girl was at the address and if so, to pick her up and hold her, and then advise the reporting agency.

On the morning of June 17, 1979, five police officers went to the house at 6337 South Wood. When they arrived, two men jumped out of a window of the house and fled. The police chased and arrested the men. At that time, needles and syringes were discovered near the window. The men arrested were Frederick Brown and Michael Jordan.

Officer Phillip Chomiak testified that defendant Glover-El was standing in the doorway to the house. Chomiak identified himself, told Glover-El that he had information concerning a girl who was being held against her will in the house, and gave defendant a copy of the message about the girl. When Chomiak said he would like to investigate the matter himself, Glover-El permitted the officer to enter and look for the girl. Officer William O'Neil also testified that Glover-El gave the policemen permission to enter the house. However, Glover-El stated that he did not permit the officers to come inside but asked them whether they had a warrant. According to Glover-El, the police then just pushed by him.

Officer Chomiak entered the house. In the living room he saw five people, none of whom was the missing girl. In a second floor bedroom, the officer saw the handle of a gun sticking out of a woman's purse. He seized the gun and the purse. When he returned to the living room, he asked who owned the purse. When Jacqueline Brown claimed it as her own, Chomiak arrested her for failure to possess city registration and a State gun owner's identification card. The police did not find the missing girl.

When Officer Chomiak returned to headquarters, he discovered that the gun he had seized belonged to LeRoy Weathers, the security guard who had been a victim of the armed robbery at the Super X store. The officer then obtained descriptions of the offenders from the policemen who were investigating that robbery. Chomiak informed the officers that he had in custody certain individuals who matched the descriptions, but a person who also matched one of the descriptions had not been arrested.

Officer Dale Riordan testified that on the afternoon of June 17, 1979, he and other officers went to the house on Wood Street. Upon entering, they saw a person who matched a description of one of the participants in the robbery. When Riordan first saw defendant Glover-El, he was in a first floor bedroom. Policemen were handcuffing Glover-El when one of the officers picked up a wallet lying on a dresser a few feet away. The officer said the wallet belonged to a victim of the June 13 robbery. It contained the driver's license of Terris Motten, the manager of the Super X store.

On the evening of June 17, 1979, Glover-El and Brown were placed in a lineup which was viewed by Weathers and Motten. Only Brown was identified as a participant in the robbery. Glover-El was released because he was not identified. On June 18, 1979, Frederick Woods, another victim of the robbery, identified defendant Glover-El from a group of six photographs. Defendant was arrested on June 20, 1979, while standing on a sidewalk. Woods identified Glover-El in a lineup that evening.

Defendant's first contention is that the trial court erred in refusing to suppress a gun seized during a warrantless entry into his home on the morning of June 17, 1979. Citing several authorities, defendant argues that the message from Wisconsin police that a young woman was being held against her will was not probable cause to enter and search his house (*People v. Gates* (1981), 85 Ill. 2d 376, 423 N.E.2d 887), and that no consent to search was given, and even if it had been given the police search exceeded such consent (*People v. Schmoll* (1943), 383 Ill. 280, 48 N.E.2d 933; *United States v. Dichiarinte* (7th Cir. 1971), 445 F.2d 126). Since we hold that defendant willingly permitted the police to search his home on the morning in question, we need only address the issue of whether the consent was exceeded.

Warrantless searches are unreasonable under the fourth amendment with a few exceptions. (*People v. Sanders* (1976), 44 Ill. App. 3d 510, 514, 358 N.E.2d 375, 378.) Consent, which waives constitutional protection, is one of the exceptions. (*Sanders*, at 514.) A reviewing court will accept the trial court's finding on the issue of consent unless that finding is clearly unreasonable. (*Sanders*, at 514.) In this case, the finding of consent was reasonable. Two policemen testified that Glover-El gave permission to search the house although defendant himself denied this. The judge viewed the appearance and demeanor of the witnesses and could reasonably find that defendant consented to the search.

■■ Defendant argues, alternatively, that even if consent were given the search exceeded that consent. Defendant states that the police should have looked into the bedroom to see whether a female was in the room without examining it further. According to defendant, consent to search for a female was not consent to conduct a general exploratory search. However, the authority cited by defendant, *United States v. Dichiarinte* (7th Cir. 1971), 445 F.2d 126, should not be interpreted in this manner. In *Dichiarinte*, the court held that consent to search a home for narcotics was not consent to read personal papers for hints of criminal activity. (*Dichiarinte*, at 130.) In this case, the search did not exceed the bounds of the consent given. The officer looked into the bedroom and saw the handle of a gun sticking out of a purse. The officer was legitimately on the premises, the gun was in plain view, and he had a right to seize it. (See *People v. Dennison* (1978), 61 Ill. App. 3d 473, 478, 378 N.E.2d 220, 224.)

Since the gun was seized during a consensual entry into defendant's home, the trial court properly denied the motion to suppress.

Defendant's second contention is that the trial court should have quashed his arrest made on the afternoon of June 17, 1979. At the suppression hearing, Glover-El testified that the police had neither a warrant to arrest nor a warrant to search the premises when they arrested him and seized a driver's license and wallet, and that subsequently he was placed in a lineup, photographed and released. Officer Riordan testified that on the afternoon of June 17, 1979, the police "entered" defendant's home. There is nothing in the record to indicate how police gained entry into the house.

The fourth amendment to the United States Constitution prohibits police from making a warrantless, nonconsensual entry into a suspect's home in order to make a routine felony arrest absent exigent circumstances. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) The State argues that even assuming an unauthorized entry, the officers were justified in arresting defendant in his home because of the presence of exigent circumstances. The following factors are to be considered in determining whether exigent circumstances exist: the gravity or violent nature of the offense; whether the suspect is reasonably believed to be armed or has exhibited signs of a violent character; a clear showing of probable cause to believe the suspect committed the crime; whether the suspect is believed to be on the premises; the likelihood the suspect will escape; the peacefulness of the entry; prompt action by the police in proceeding to arrest the suspect after having gained information establishing probable cause; and no delay during which time a warrant could have been obtained. (*People v. Thompson* (1981), 93 Ill. App. 3d 995, 1004-05, 418 N.E.2d 112, 120.) These factors need not all be present and need only be satisfied on balance. *Thompson*, at 1005.

■■ We hold that exigent circumstances justifying the warrantless entry to arrest defendant are not present in this case. Although armed robbery is a grave offense, the gravity of the offense does not of itself create an exigent circumstance. (See *Mincey v. Arizona* (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408.) The police did not have reason to believe Glover-El was armed and violent at the time of their afternoon entry, since he had peacefully allowed them to enter and search his house that morning. Moreover, they had no reason to believe defendant was still at home or that he was likely to escape. The offense had taken place on June 13, 1979. There was no showing that the police had to act without first obtaining a warrant because of the recentness of the offense and the need for prompt action within the spirit of the hot pursuit doctrine. (*People v. Hart* (1980), 88 Ill. App. 3d 484, 488, 410 N.E.2d 633, 636.) Since we hold that defendant's arrest was illegal, the evidence seized as a result of that

arrest—the wallet with the driver's license identification—should have been suppressed.

We need not reach the issue of whether the out-of-court identifications should also have been suppressed. Even assuming that the photographic and lineup identifications were fruits of the illegal search, their suppression would not affect the result in this case. The illegal arrest did not infect the victim's ability to give accurate identification. (*United States v. Crews* (1980), 445 U.S. 463, 472, 63 L. Ed. 2d 537, 546, 100 S. Ct. 1244, 1250.) Woods' courtroom identification rested on an independent recollection of his initial encounter with defendant uninfluenced by pretrial identifications. (*Crews*, 445 U.S. 463, 473, 63 L. Ed. 2d 537, 547, 100 S. Ct. 1244, 1251.) Woods walked 30 feet to the back of the liquor store with ample opportunity to observe Glover-El in the brightly-lit store. Woods' in-court identification together with the gun and the accomplice testimony of Brown was sufficient evidence to support defendant's conviction.

■■ Although we hold that the June 17, 1979, arrest was illegal and the wallet and driver's license should have been suppressed, this does not necessarily require reversal of defendant's conviction. The standard for determining whether error is harmless or reversible is whether it is harmless beyond a reasonable doubt. (*People v. Bascomb* (1979), 74 Ill. App. 3d 392, 396, 392 N.E.2d 1130, 1133.) Error may be harmless because the error itself is inconsequential or, if the error is of a more serious nature, it may be deemed harmless when balanced against the strength of the State's evidence. (*Bascomb*, at 398.) There was overwhelming evidence of defendant's guilt. Frederick Brown, the accomplice witness, testified that Glover-El participated in the June 13 robbery; Woods identified defendant as a participant in the robbery; and the gun seized on the morning of June 17, 1979, in defendant's home implicated Glover-El in the offense. Because of this holding, it is unnecessary for us to consider defendant's contention that the Illinois search without warrant statute (Ill. Rev. Stat. 1977, ch. 38, par. 108—2(d)) is unconstitutional.

Defendant's next argument is that he was denied a fair trial because the State failed to provide a prior statement of the accomplice witness, Frederick Brown. In a proceeding outside the presence of the jury, Brown testified as follows:

> "Q. What did that assistant State's Attorney say to you and what did you say to that assistant State's Attorney at that time [after the lineup]?
> A. He said—he said to me, 'Well, we're going to charge you with armed robbery and because you have been identified,' and I don't know for some other reason. I got mad and I walked away, you

> know, I said, 'Well, yes. Well you got me anyway.' You know, like that."

Defendant claims that the failure to provide the statement, "Well, yes. Well you got me anyway" prejudiced defense counsel in preparing for an effective cross-examination.

■■ The failure to comply with discovery constitutes reversible error when the defense has requested discovery and the evidence discoverable would have been material and also favorable to the defendant. (*People v. Hutchison* (1977), 55 Ill. App. 3d 716, 718, 371 N.E.2d 201, 203.) Defendant has not shown how the statement is favorable to him. Even if the statement were construed as an admission by Brown, it would have no impeachment value since Brown admitted his guilt at trial. In our opinion, the statement was not favorable to defendant, and no prejudice resulted. (*Hutchison*, at 720.) Therefore, we hold that the failure to provide the statement of the accomplice witness does not constitute grounds for reversal in this case.

Defendant contends the trial court erred in allowing the State to amend the indictment so as to substitute the name of one complaint for another where the grand jury had been sworn to such a charge. In the original indictment, Glover-El was charged in one count with the armed robbery of Frederick Woods by taking money from him and in another count with the armed robbery of Woods by taking money and a gun from him. The trial court allowed the State to amend the latter count by substituting the name of LeRoy Weathers for Frederick Woods. At the grand jury proceedings, the investigating officer reported that money was taken from Woods and that money and a gun were taken from Weathers.

■■ An indictment may be amended on motion by the State's Attorney or defendant at any time because of formal defects including a miswriting. (Ill. Rev. Stat. 1977, ch. 38, par. 111—5.) In the case at bar, the insertion of the name of Woods as the victim in both counts of armed robbery was a miswriting. The amendment to substitute the name of Weathers conformed the indictment to the evidence heard by the grand jury. That jury had heard no testimony that money and a gun had been taken from Woods.

A case in point is *People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361, in which the court allowed the amendment of an indictment to correct the victim's first name because the correction was a mere formality. Where no hint of surprise or prejudice to the defendant was shown, allowance of the amendment was not error. (*Jones*, at 465.) In our case, the substitution of names was a formality, and defendant was not prejudiced because he was aware that he was charged with taking Weathers' gun. We hold that the trial court properly allowed an amend-

ment to the indictment so that it would conform to the charge approved by the grand jury.

Defendant contends he was not proved guilty beyond a reasonable doubt because the testimony of the accomplice witness, Frederick Brown, had grave inconsistencies and because Brown was a habitual drug addict. Whether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for conviction goes to the weight of the evidence and is in the province of the jury or court. (*People v. Brisbon* (1980), 89 Ill. App. 3d 513, 526, 411 N.E.2d 956, 966.) Brown's testimony was only part of the evidence against Glover-El. Woods, who had ample time to observe, identified defendant at trial. Weathers' gun was found in defendant's home. Furthermore, Brown's testimony about the robbery was consistent with the testimony of the victims and was not contradicted or significantly impeached. The jury's verdict was supported by the evidence and left no reasonable doubt as to defendant's guilt.

■■ Defendant asserts that he was denied the right to effective assistance of counsel because his attorney refused to call alibi witnesses and to bring out certain questions about the State's witness which were favorable to the defense. Glover-El's attorney did not call certain witnesses who could not identify defendant as an offender because they had already testified and could add nothing more to the case to help defendant. Competency is determined from the totality of counsel's conduct at trial and errors in judgment or trial strategy do not establish incompetency. (*People v. Julian* (1980), 89 Ill. App. 3d 60, 64, 411 N.E.2d 337, 340-41.) We find that the errors now asserted against defense counsel were in the nature of judgment and trial strategy which do not establish incompetency.

■■ Finally, defendant argues that he was deprived of a fair trial because of improper and inflammatory remarks of the prosecutor during closing argument. The prosecutor made the following statements:

"[Y]our think about what Mr. Woods told you. 'I stopped in, I wanted to buy a pack of cigarettes and I walked in and I realized, oh, there is a robbery in progress. I realized it because I had to walk looking at the defendant Glover 30 feet in his direction.'

Now, you think about it when you go back to the jury room and you think about how long 30 feet is. Try pacing it off. It's probably once around the jury room and you look at one of your fellow jurors—

\* \* \*

In a few minutes—excuse me, a few days after that, Glover is arrested, put in a lineup and identified in that lineup. Nothing can erase the upset and the terror that went into those people at about 11 o'clock at night on June 13, 1979.

You tell James Glover, ladies and gentlemen, with your verdict

of guilty, that maybe he could duck from the first lineup, maybe he could duck and not be—

        *  *  *

Maybe he was clever enough not to be seen because—and not be identified in the first lineup—

        *  *  *

  * * * Now you heard from those two people, Mr. Motten, the manager, and Mr. Weathers, the security man, the customer. Remember what they said, that Frederick Brown came into this liquor store by himself and put a gun on the customer's head, Mr. Weathers—she saw him testify, he was nervous enough testifying before you, citizens of the community. Can you imagine his condition at that time? Put your hands up, put your hands down, jump over the counter, and I can assure you that's how it happened."

These remarks were objected to by the defense and sustained by the court except the third remark. Any prejudice was cured by the judge's instruction to the jury to disregard the comment. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.

  Defendant also states that the prosecutors made improper signals to their witnesses during trial, but nothing in the record indicates this other than defendant's statement. A mere allegation is not sufficient to bring a matter to the attention of the reviewing court. *Keehner v. A. E. Staley Manufacturing Co.* (1977), 50 Ill. App. 3d 258, 261, 365 N.E.2d 275, 277.

  For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

  Judgment affirmed.

  ROMITI, P. J., and LINN, J., concur.