THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID W. WHITFIELD, Defendant-Appellant.

Fifth District   No. 5—84—0638

Opinion filed January 28, 1986.

434

David C. Hoffman, of Ripplinger, Dixon, Hoffman & Ver Steegh, of Belleville, for appellant.

Randall J. Rodewold, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:
Following a jury trial in the circuit court of Randolph County, defendant, David Whitfield, was convicted on two counts of unlawful possession of a controlled substance (cocaine and heroin) with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(c)) and one count of

unlawful possession of more than 500 grams of cannabis with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 705(e)). The circuit court entered judgment on the jury's verdict, and defendant now appeals. We affirm in part and vacate in part.

Defendant was employed as a guard at the Menard Correctional Center in Chester. On the morning of April 11, 1984, defendant drove to work at the prison from his home in East St. Louis. He parked his automobile in the prison lot and proceeded to the guard hall to report for duty. After signing in he was stopped by a superior officer and advised that he was to be strip-searched. The officer, Lieutenant Eggenmeyer, escorted defendant to a bathroom adjoining the guard hall where the search was to be conducted. Another lieutenant, named Kimmell, was present.

Defendant was apparently asked to empty his pockets and remove his clothes. From his pockets defendant removed seven cigarette packages. Two additional cigarette packages were later found in his jacket. All nine packages were sealed with cellophane, but upon closer inspection appeared to have previously been opened, were of somewhat different shape and firmness than regular cigarette packages, and bore tax stamps from the city of Chicago. The packages were opened by prison officials and eight of them were found to contain a green, leafy material. Two types of powder were found in the ninth. A field test of the leafy material showed it to be cannabis. This· was subsequently confirmed through lab analysis done by the Bureau of Scientific Services of the Department of Law Enforcement. The Bureau's analysis established the powder to be cocaine and heroin.

Although defendant was told he would be strip-searched, he actually removed only his shoes and jacket. After the adulterated cigarette packages were discovered, the search ended. Defendant was then advised of his constitutional rights, signed a written waiver of those rights, and consented to giving a statement to the officer in charge of internal security at the prison, Captain Umbdenstock. Defendant was interviewed in Umbdenstock's office in the presence of Umbdenstock, Eggenmeyer, Kimmell, and Associate Warden Jim Buch. He admitted that he had been paid to bring the cigarette packages into the prison and had been directed to leave them in a vanity in the bathroom where he had been searched. That bathroom is accessible to prison inmates.

A Randolph County deputy sheriff arrived at the scene during the interview. The deputy placed defendant under arrest and transported him to the county jail. Umbdenstock visited defendant's jail cell with Deputy Sheriff Ewart Malott, learned that defendant had parked his

car on the prison lot, and received permission from defendant to search it. Umbdenstock and Malott then obtained defendant's keys from the jail and returned to the prison, where they carried out a search of defendant's car. They found nearly three more full cartons of cigarettes in the car's trunk. Analysis by the Bureau of Scientific Services disclosed that these cartons contained approximately 645 grams of cannabis. The packages from defendant's jacket concealed an additional 193 grams of cannabis, slightly more than 1.3 grams of cocaine, and slightly more than eight grams of heroin.

Later in the afternoon of April 11, defendant was once again advised of his constitutional rights, signed a second written waiver of those rights, and voluntarily gave another statement to Captain Umbdenstock. Two special agents from the Department of Law Enforcement were also present. During this interview, defendant made various additional incriminating admissions, including that he had previously brought five cigarette packages containing contraband into the prison, for which he had been paid $500. Defendant further revealed that he had been paid $950 to bring in the cigarette packages he was carrying when arrested that morning.

On April 16, 1984, the State's Attorney for Randolph County filed a three-count criminal information against defendant arising from the events of April 11. Defendant moved to suppress the evidence obtained through the search of his person and automobile on the grounds that the search violated his rights under the fourth amendment to the United States Constitution. Defendant's motion was denied, and he was subsequently found guilty by the jury on all three counts.

■ Defendant's first argument on appeal is that the testimony of the State's expert witness was insufficient to prove beyond a reasonable doubt that the powder found in the ninth cigarette package consisted of cocaine and heroin as charged in counts I and II of the information. The powder was identified at trial by Stephen Hampton, a forensic scientist employed by the Bureau of Scientific Services. Hampton testified that he had performed the analysis of the powder and that his testing disclosed the presence of cocaine and heroin in the quantities previously noted. Defendant questions neither Hampton's qualifications as an expert, nor the chain of custody of the evidence he examined. Rather, defendant challenges only the manner in which Hampton's testimony was presented. According to defendant, that testimony was insufficient to establish the powder's composition because Hampton failed to set forth the factual basis for his opinion prior to making his identifications for the jury. This argument has no

merit.

Our supreme court has adopted the procedures embodied in Rule 705 of the Federal Rules of Evidence for presentation of expert testimony. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 195-96, 417 N.E.2d 1322, 1327, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.) That rule specifically states:

> "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed. R. Evid. 705.

Under the plain language of the rule, an expert is clearly not required to divulge the facts or data he considered before being allowed to state his opinion. This is so whether the opinion is based on firsthand or secondhand information. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 194, 417 N.E.2d 1322, 1327.) Cross-examination is the appropriate method of eliciting the facts underlying an expert's opinion. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 482, 473 N.E.2d 1322, 1340.) The burden of establishing these underlying facts through cross-examination rests, of course, with the adverse party. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 194, 417 N.E.2d 1322, 1327.) In the present case, defendant's attorney made no effort to cross-examine the State's expert witness regarding the test procedures he employed in identifying the powder. Under these circumstances, any deficiencies in development of the expert's testimony were defendant's responsibility alone. The expert testified properly, and his unchallenged identification of the powder was sufficient for the jury to find beyond a reasonable doubt that it consisted of cocaine and heroin.

Defendant next contends that the warrantless search of his person and automobile were unconstitutional and that the evidence obtained in these searches should therefore have been suppressed. Our court has held that warrantless searches are *per se* unreasonable under the fourth amendment to the United States Constitution unless they fall within a few specifically established and well-delineated exceptions. (*People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 404, 470 N.E.2d 1247, 1250.) Consent, which waives constitutional protection, is one of those exceptions. (*People v. Glover-el* (1981), 102 Ill. App. 3d 535, 539, 430 N.E.2d 147, 151, *cert. denied* (1982), 458 U.S. 1110, 73 L. Ed. 2d 1372, 102 S. Ct. 3492.) In this case the trial court specifically found after an evidentiary hearing that defendant had consented to the search of his car and his person. A reviewing court will accept a trial court's finding on the issue of consent unless that finding is

clearly unreasonable. (*People v. Glover-el* (1981), 102 Ill. App. 3d 535, 539, 430 N.E.2d 147, 151.) The trial court's finding here was reasonable.

■ With respect to the search of defendant's person, evidence showed that defendant had signed a "Waiver and Consent to Search" form as a condition to employment at the prison. The signed form stated in pertinent part:

> "I, David W. Whitfield, having been informed that the rules of this institution, as approved by the Department of Corrections and the laws of the State of Illinois, prohibit individuals from possessing certain materials, objects and items while on State property, and having full knowledge that the mere possession of these certain items is contrary to law, do hereby and herewith consent to the search, under reasonable circumstances, of my living quarters and my person by the Chief Administrative Officer of the institution or his designated Assistant or Assistants.
>
> * * *
>
> Being fully aware of my constitutional rights and of my rights and obligations as an employee, I do hereby waive any rights I may have, and voluntarily and of my own free will, consent to a search of my clothes and person immediately prior to or subject to, or while I am on duty as such employee, or at any time that I shall be present on the property of the Department of Corrections."

Defendant does not deny executing this form freely and voluntarily, but claims that the search on April 11 exceeded the scope of the consent given. He argues that the form did not contemplate anything as intrusive as a strip-search. As previously noted, however, there was in fact no such search. A strip-search does not occur when, as here, a person is merely required to remove his jacket (*Shorter v. United States* (9th Cir. 1972), 469 F.2d 61, 63, *cert. denied* (1973), 411 U.S. 918, 36 L. Ed. 2d 310, 93 S. Ct. 1555) or take off his shoes (*United States v. Chase* (9th Cir. 1974), 503 F.2d 571, 574, *cert. denied* (1975), 420 U.S. 948, 43 L. Ed. 2d 427, 95 S. Ct. 1332). That defendant was ordered to remove all of his clothes is not dispositive. What matters is what he actually did. (*United States v. Chase* (9th Cir. 1974), 503 F.2d 571, 574.) The consent form specifically authorizes searches of defendant's clothing, as well as his person. Requiring defendant to empty his pockets, take off his jacket, and remove his shoes falls squarely within this authorization. We cannot comprehend under these circumstances how defendant's consent was possibly ex-

ceeded.

■ With respect to defendant's automobile, the evidence showed: (1) that defendant had been advised when he took the job that his car was subject to search when parked on prison grounds; (2) that a large sign posted in the prison lot advised persons that all cars parked there were subject to search; (3) that searches were conducted of visitors' and guards' cars parked on the prison lot "nearly on a weekly basis"; and (4) that defendant gave verbal permission for his car to be searched on April 11. Given these facts, the circuit court's conclusion that the search of defendant's car was based on valid consent is entirely reasonable. The court did not err in refusing to suppress the evidence.

■ A third argument raised by defendant is that the court erred in failing to grant a mistrial based upon certain testimony linking drugs to assaults in the prison. The testimony developed as follows. During direct examination, the State's Attorney asked Captain Umbdenstock whether a drug problem existed at the prison. Umbdenstock answered in the affirmative over defendant's objection. The following exchange then took place:

> "State's Attorney: And is the fact that the inmates might have these illegal substances in the penitentiary, does that cause the running of the institution problems?
>
> Captain Umbdenstock: Most definitely it does.
>
> State's Attorney: In what way?
>
> Captain Umbdenstock: Assaults, a number of assaults—."

At this point defendant's attorney objected again and moved for a mistrial. The motion was denied, but defendant's objection to the last question was sustained, and the jury was instructed to disregard Umbdenstock's last answer. Defendant now contends that Umbdenstock's statement was so inflammatory and prejudicial in the context of the other evidence adduced that he was denied a fair trial. We disagree.

Although the State concedes the challenged statement was improper, the conclusion that defendant was denied a fair trial does not follow as a matter of course. The mere occurrence of improper remarks does not itself mandate reversal. (*People v. Belvedere* (1979), 72 Ill. App. 3d 998, 1025, 390 N.E.2d 1239, 1258.) Where, as here, a timely objection is made at trial, either to improper interrogation, or to an improper remark by counsel to the jury, the court can, by sustaining the objection or instructing the jury to disregard the answer or remark, usually correct the error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 238.) Where error does result, defense counsel's prompt and timely objection and an appropriate admonition

by the court to the jury will normally render the error harmless. See *People v. Negron* (1979), 77 Ill. App. 3d 198, 203, 395 N.E.2d 1055, 1059.

■ To warrant reversal, the challenged remarks must be shown to have caused substantial prejudice, constituted a material factor in defendant's conviction, or produced a judgment different from that which would have resulted absent the alleged impropriety. (*People v. Belvedere* (1979), 72 Ill. App. 3d 998, 1025, 390 N.E.2d 1239, 1258.) Having reviewed the entire record in this case, we do not believe that the question by the State's Attorney, and Captain Umbdenstock's response, were a significant factor in the jury's determination. To conclude otherwise would require us to disregard the overwhelming evidence of defendant's guilt adduced at trial.

■ Defendant's final major contention is that the State failed to prove beyond a reasonable doubt that defendant intended to deliver more than the 193 grams of cannabis contained in the cigarette packages he was carrying when arrested. The jury's verdict finding defendant guilty of possession with intent to deliver more than 500 grams of cannabis necessarily assumes a determination that defendant also intended to deliver the additional 645 grams of cannabis found in the trunk of his car. Defendant, however, asserts that this finding is against the manifest weight of the evidence. The record shows otherwise.

Although defendant stated that he only intended to deliver the nine cigarette packages he was carrying, Captain Umbdenstock testified that defendant admitted to him that he had planned to bring into the prison all of the cigarette packages found in his car. The cannabis found in his car was packaged in the same manner as that found on defendant's person when he was searched. Moreover, the cannabis from defendant's car was in excess of any amount which could be viewed as for personal use. Based on this quantity, and in light of the other evidence, the jury could properly infer and conclude that defendant possessed the substance with intent to deliver. *People v. Kline* (1976), 41 Ill. App. 3d 261, 266, 354 N.E.2d 46, 51.

■ Defendant raises various subsidiary arguments for reversal. On careful examination of the record, we have found these arguments to be without merit. We have determined, however, that error was committed when defendant was convicted and sentenced for both unlawful possession of cocaine with intent to deliver (count I) and unlawful possession of heroin with intent to deliver (count II). Under *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, the simultaneous possession of more than one type of controlled substance constitutes

but a single offense for which there can be only one conviction. (*People v. Tonaldi* (1981), 98 Ill. App. 3d 528, 533, 424 N.E.2d 1200, 1204.) On the facts of this case, defendant's conviction and sentence under either count I or count II must therefore be vacated.

Although defendant did not raise this point at trial or in his argument on appeal, we take notice of it pursuant to Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). Plain error has been committed affecting substantial rights of defendant. Application of the waiver rule here would be unjust to defendant and produce a result flatly inconsistent with the holding of our supreme court in *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200. The State has advised this court that if the waiver rule is not applied it will concede applicability of *People v. Manning* and request that the conviction and sentence under count I be vacated. Counts I and II charge felonies of equal seriousness, and we see no reason why the State's request should be denied. Accordingly the judgment of the circuit court of Randolph County is vacated as to defendant's conviction and sentence under count I, but affirmed in all other respects.

Affirmed in part; vacated in part.

WELCH and JONES, JJ., concur.