THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER GRANT, Defendant-Appellant.

First District (3rd Division)   No. 61417

Opinion filed March 28, 1979.

James Streicker and Martin Carlson, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Jake Crosby was fatally shot during the early evening hours of January 24, 1973. The defendant, Walter Grant, was arrested the following day and bail was denied. On March 13, 1973, a preliminary hearing was held. An indictment was subsequently returned against Grant, Alexander Anderson and Samuel Green, charging them with attempt armed robbery and murder. Grant's motion for severance was allowed and he was tried separately by a jury. At the close of the State's evidence, the court granted the defendant a directed verdict on the attempt armed robbery charge. The murder charge was submitted to the

jury and it found Grant guilty of voluntary manslaughter. He was sentenced to a term of 6 years, 8 months to 20 years in the penitentiary.

Grant appealed to this court challenging his conviction on five grounds: (1) that he was not brought to trial within the 120-day period required by the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5); (2) that he was denied his constitutional right to a prompt preliminary hearing; (3) that evidence of weapons unconnected with the crime of which he was charged was improperly admitted; (4) that the State engaged in improper closing argument, and (5) that his sentence was excessive. This court, in the original appeal, considered only the speedy trial issue and reversed his conviction. (*People v. Grant* (1976), 42 Ill. App. 3d 790, 356 N.E.2d 933.) The supreme court reversed the appellate court's judgment and remanded the cause to this court for consideration of the other issues. *People v. Grant* (1977) 68 Ill. 2d 1, 368 N.E.2d 909.

Testifying for the State, Darnell Clay asserted that on January 24, 1973, at approximately 5:15 p.m., he observed Grant, Anderson and Green coming from a club called the "Spy Love Center" which was located at 1838 South Ridgeway Avenue, Chicago. Clay observed the butt of a shotgun protruding from under the three-quarter length black coat Grant was wearing. A few minutes later, as Clay was walking along Hamlin Avenue, he heard someone behind him say "hold it" or "stop." Clay turned and saw Grant on the sidewalk in front of a house which was located about three houses north of the corner of 18th and Hamlin. Grant was holding the shotgun so that the barrel was pointing in the air over his right shoulder. Clay also observed a man, later identified as Jake Crosby, on the porch of the house.

Clay stated that Crosby fired three shots. Grant started to run, reaching the corner of 18th and Hamlin. However, he then returned to the house and "sort of looked around." Crosby stuck his hand out of the doorway of the building. Grant thereupon fired twice and Crosby answered with one more shot. The defendant then stumbled over a small fence chain in the yard and leaned against a tree.

Harold Crosby, the 13-year-old grandson of the deceased, testified that at 5:30 p.m. on January 24, 1973, he was in his home located at 1858 South Hamlin. He heard approximately four gun shots and when he looked out the window about a minute later, he saw a boy wearing a black coat and carrying a long gun running south. Harold went downstairs where he found his grandfather lying in the vestibule; his grandfather was bleeding from the chest and had a gun in his hand. The gun was later identified as a five-shot, .38-calibre revolver and had four expended shells and one live shell in its chamber.

Officer Raynor Ricks, of the Chicago Police Department, stated that

he arrived at 1858 South Hamlin at approximately 5:30 p.m., after responding to a radio call. A few minutes later, a second radio call anounced a"[m]an shot in the alley at 1838 or 40 South Ridgeway." Since this address was less than a block away, he and his partner ran to investigate this second call. On arrival at 1838 South Ridgeway they observed two men running up the back stairs of the building. One of the two men, Darnell Clay, was apprehended.

Officer Gilbert Broderick, also of the Chicago Police Department, testified that on January 24, 1973, he arrived at 1838 South Ridgeway at approximately 5:40 p.m. The defense counsel then requested a side-bar conference at which time he objected to Officer Broderick making any statements as to the discovery in the building of certain weapons which were unconnected with the shooting. The court overruled the objection with the limitation that the State not exhibit any of the other weapons found but that they could be described. Broderick then testified that in the basement of the building at 1838 South Ridgeway he found a pistol, a sawed-off rifle, a sawed-off shotgun and over 100 rounds of ammunition. The shotgun appeared to have been recently fired.

Daniel J. Pierce, an assistant State's attorney for Cook County, testified that he interviewed Clay late on the evening of January 24, 1973. The defense counsel raised an objection to any statements from Pierce which would tend to impeach Clay's testimony on the manner in which Grant was holding the shotgun immediately before Jake Crosby fired his revolver. The State contended that such testimony from Pierce was proper since Clay was a hostile witness. The court overruled the objection. Pierce testified that when Clay gave his statement he also demonstrated the manner in which Grant was holding the weapon. According to Pierce, Clay indicated that the defendant's left hand was placed midway on the barrel and his right hand was on the front of the weapon, near the trigger. The barrel of the shotgun was facing outward.

Pierce also took both an oral and written statement from Grant. In these statements Grant asserted that on the evening of January 24, 1973, he was playing a pinball machine in a neighborhood store. As he was leaving, he jumped in line in front of Jake Crosby. Crosby became angry and pulled a gun. Grant left and went to 1838 South Ridgeway where someone handed him a shotgun. He then returned to the store but Crosby was not there. As he walked back towards the 1838 Ridgeway building, he encountered Crosby on Hamlin. Crosby shot once. Grant tried to get away but slipped and fell. He then tried to hide behind a tree but Crosby hit the tree. The defendant fired one shot; the second shot "just went off." He was uncertain where the gun was pointed when it went off.

W.C. Dabbs was the owner of the grocery store where the altercation between Grant and Crosby allegedly took place. He testified that Jake

Crosby came in a little after dark on January 24, 1973, and purchased a can of tobacco. At the time there were only about three people in the store and he did not see Grant that evening. The defendant presented no witnesses but rather relied upon a claim of self-defense.

The first issue we consider is whether Grant is entitled to a reversal of his conviction because he was denied his constitutional right to a prompt preliminary hearing. (Ill. Const. 1970, art. I, §7.) The record shows that there was a 47-day delay between Grant's arrest and the holding of a preliminary hearing. Even assuming that the delay impinged upon the defendant's rights under article I, section 7 of the 1970 Constitution, reversal is not an available remedy.

In *People v. Hendrix* (1973), 54 Ill. 2d 165, 169, 295 N.E.2d 724, 727, the Illinois Supreme Court, while holding the defendant's rights under section 7 were not violated, expressed the following view of the constitutional provision:

"The second paragraph of section 7 does not provide a grant of immunity from prosecution as a sanction for its violation. Nor would an interpretation make sense which required the dismissal of the present indictment and the discharge of the defendant, to be followed by his reindictment and rearrest under a new indictment."

This view was re-emphasized in *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403. There the defendant appealed his conviction for attempt murder on the grounds that a 65-day delay between his arrest and his preliminary hearing violated his constitutional rights. While concluding that the defendant had waived the issue by failing to raise it before the trial court, the supreme court, neverthless, noted the absence of a remedy for violations of the section 7 right to a prompt preliminary hearing and "strongly urge[d] the General Assembly to consider the prompt implementation of this constitutional provision." (60 Ill. 2d 117, 123, 324 N.E.2d 403, 406.) In *People v. Hunt* (1975), 26 Ill. App. 3d 776, 326 N.E.2d 164, this court relied upon *Hendrix* and *Howell* in concluding that the defendant was not entitled to dismissal of the charges against him for a violation of his constitutional right to a prompt preliminary hearing.

The Circuit Court of Cook County has initiated some measures to promote the prompt commencement of preliminary hearings. Rule 14.1 of the Circuit Court Rules provides:

"All preliminary hearings in felony cases are to be held within 30 days of the arrest of an accused. Preliminary hearings may be continued beyond the 30-day period only upon a showing of exeptional circumstances which warrant delay." (Effective March 1, 1977.)

Morever, General Order No. 77-1(M) of the General Orders of the

Municipal Department (District One) of the Circuit Court of Cook County states:

"It is further ordered that a defendant not released on bond shall be given a preliminary hearing immediately following the approval of the charges against him by the proper authority.

It is further ordered that a defendant who posts bond on a felony charge shall be given a preliminary hearing not later than five days from the date the charges against the defendant are approved by the proper authority." (Effective March 1, 1977.)

The supreme court again brought the need for implementing legislation to the attention of the General Assembly in their 1977 annual report. (Ill. Const. 1970, art. 6, §17.) However, such legislation has yet to be enacted into law.

We note that recently, in *People v. Kirkley* (1978), 60 Ill. App. 3d 746, 377 N.E.2d 540, the convictions of two defendants for the offenses of unlawful possession of a controlled substance and unlawful possession of cannabis were reversed because their rights to a prompt preliminary hearing were violated. The defendants demanded a preliminary hearing four days after they were arrested. No preliminary hearing was ever held and an indictment was not returned against the defendants until 176 days after their arrest. Calling the delay "the most flagrant section 7 violation of any of those called to the attention of the reviewing courts of [Illinois]," the court felt "compelled to provide a remedy for the defendants who have suffered an unjustifiable denial of a basic constitutional right."60 Ill. App. 3d 746, 750, 377 N.E.2d 540, 543.

Under the precedents established by *Hendrix* and *Howell*, we are impelled to conclude that Grant is not entitled to a reversal of his conviction because of the delay in the commencement of his preliminary hearing.

Grant next contends that the trial court committed reversible error in admitting Officer Broderick's testimony on the discovery of the weapons in the building at 1858 South Ridgeway. He does not challenge the propriety of the testimony relating to the sawed-off shotgun; rather he argues that the evidence of the ammunition, sawed-off rifle and the pistol was irrelevant to the crime involved and thus should not been admitted. We find that it was error to admit the testimony on the additional weapons but hold that the error was harmless.

A trial error will be deemed harmless where the evidence supporting the defendant's conviction is so overwhelming that the defendant's conviction would, of necessity, result even if the error was eliminated. (*People v. Blackman* (1976), 44 Ill. App. 3d 137, 358 N.E.2d 50.) We have such a situation in this case.

■■ In weighing the defendant's claims to self-defense, the jury had to

determine if Grant fired the weapon because he reasonably believed that the use of such force was necessary "to prevent imminent death or great bodily harm to himself." (Ill. Rev. Stat. 1977, ch. 38, par. 7—1.) While Officer Broderick's testimony on the additional weapons raised an inference that Grant was a member of a club which engaged in violent activity, this inference was significantly reduced by the fact that weapons themselves were not displayed to the jury. The evidence also disclosed that following an incident in a neighborhood store, the defendant obtained a sawed-off shotgun and went searching for the decedent. After finding Crosby, the shooting occurred. Therefore, we find that it was harmless error to admit into evidence the discovery of weapons unconnected with the crime for which the defendant was charged.

Grant also argues that in the closing argument it was prejudicial error for the State to comment on Pierce's testimony on how Grant was holding the shotgun, since this evidence was admitted for the purpose of impeachment and it was not substantive evidence.

In closing argument the assistant State's attorney said:

"Walter Grant has this gun like this. (Indicating.) You saw Mr. Pierce demonstrate."

On rebuttal, the following comments were made:

"You know * * * where that gun was pointing * * * you know where the gun was pointing. It was pointing at Jake Crosby.

The defendant made no objections to the above comments.

The defendant contends on appeal that these comments were prejudicial error based on *People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804. However, in *Bailey* the prior inconsistent statements were probative of the defendant's guilt. This is not the situation in our case. Clay testified that there were two confrontations between Grant and the decedent, Crosby. The prior inconsistent statement referred to the first meeting at which time the defendant did not fatally shoot Crosby. Even though the two confrontations were very close in time, there is no question but that the defendant fired the fatal shot at the second confrontation. As discussed earlier, there is evidence indicating that the defendant went looking for Crosby with a loaded gun, apparently intending to use the gun when he located Crosby. The evidence also discloses that Grant ran from Crosby after the first series of shots were fired, but that he returned and it was at that time that Crosby was fatally shot by the defendant. The jury might very properly have determined that these facts destroyed the defendant's theory of self-defense. In order to prove prejudice resulting from certain remarks made by the prosecution in closing argument, the defendant must establish that there was a reasonable possibility that the questionable comments, in light of all of the evidence, were a material factor in his conviction. (*People v.*

*Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771; *People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513.) In the present case we do not believe that the prosecutor's comments during closing argument were a material factor in the conviction of the defendant. We hold that any error committed by the prosecutor in making these statements did not prejudice the jury against the defendant, and, therefore, a reversal of the verdict and a new trial are not required.

The defendant's final contention is that the sentence he received of 6 years, 8 months to 20 years imprisonment is excessive. He argues that the trial court did not take into account his age, his lack of a criminal record and his potential for rehabilitation.

The record discloses that the trial court considered these factors. At the hearing in aggravation and mitigation it was brought out that the defendant was 18 years of age, he did not have a prior criminal record and he had close family ties. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the court held that the imposition of a sentence is a matter of judicial discretion and that absent an abuse of that discretion, the sentence of the trial court may not be altered on review. We do not find in this case that the trial court abused its discretion in imposing the sentence.

For the reasons stated above, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and JIGANTI, JJ., concur.