Ronald Vandeveer, a minor, by Eunice Seaman, next friend, Plaintiff-Appellant, v. George W. Preston, d/b/a Preston's Liquor and Food, et al., Defendants. Arthur Magrini, d/b/a Liquorette, Defendant-Appellee.

Gen. No. 10,087.

Third District.

February 26, 1957.

Released for publication March 14, 1957.

Ralph E. Suddes, of Mattoon, for plaintiff-appellant.

Frank G. Schubert, of Springfield, and Dobbins & Fraker, of Champaign, for Arthur Magrini, d/b/a Liquorette, defendant-appellee; Frank G. Schubert, of Springfield, and French L. Fraker, of Champaign, of counsel.

JUDGE CARROLL delivered the opinion of the court.

This is an appeal by plaintiff from a judgment in favor of defendant Arthur Magrini, entered upon a jury verdict in an action for damages under the Statute commonly referred to as the Dram Shop Act. (Sec. 135, Chap. 43, Ill. Revised Statutes 1953.)

The suit was brought by Ronald Vandeveer, a minor, by his next friend against Arthur Magrini and George W. Preston. The complaint charged that the defendants brought about the intoxication of Donald Boucher; that while so intoxicated he operated an automobile in which Dorothy Raner, plaintiff's mother, was riding; that he so operated the said automobile as to bring it into collision with a telephone pole causing injury to and the subsequent death of Dorothy Raner; and that as a result thereof, plaintiff was injured in his means of support.

At the close of plaintiff's evidence, the court allowed the motion of defendant Preston for a directed verdict. The jury returned a verdict in favor of the defendant Magrini. Plaintiff's post-trial motion for judgment notwithstanding the verdict and for a new trial was overruled.

Facts not appearing to be disputed are substantially that on September 5, 1954, decedent, accompanied by Darlene Gunn, drove her car from Charleston, Illinois to Rantoul, Illinois, where they arrived at about 8:30 p.m. and were joined by Donald Boucher, who was 19 years old, and Walter Guziec; that with Boucher driving, a stop was made at defendant's place of busi-

ness, known as the Liquorette, where four 6-Packs of beer were purchased and placed in the car; that the party then proceeded to a drive-in theatre where they remained until about 11:30 o'clock; that while at the theatre they consumed the beer or the major portion thereof; that Boucher and Guziec each drank about six bottles; that Darlene Gunn drank one and one-half bottles and Dorothy Raner had three or four bottles; that with Boucher driving, the car proceeded over country roads towards the Rantoul Air Base; that the car made a stop along the road a short distance from where the accident occurred, but as to whether any beer was consumed by members of the party at that time is not clear; that in making a turn at a T-intersection, the car left the road and crashed into a telephone pole; that all of the occupants of the car were injured; that the injuries sustained by Dorothy Raner caused her death and that decedent and plaintiff's father had been divorced and the latter was not contributing to plaintiff's support.

Points urged as warranting reversal are that (1) the verdict is against the manifest weight of the evidence (2) the court erred in its ruling as to the admissibility of certain evidence and (3) the court erred in giving instructions on behalf of the defendant and in refusing to give certain instructions on behalf of the plaintiff.

The basic question confronting the jury in this case was whether or not Boucher was intoxicated. Darlene Gunn testified that in her opinion Boucher was under the influence of intoxicating liquor. She further testified that when she and decedent met Boucher he was sober; that at the drive-in theatre there was nothing about Boucher's manner of speaking which would indicate his intoxication; that he spoke normally and acted normally and behaved properly; that he acted as a sober person; that his conversation was clear and lucid; that while driving he had the car under

33

control; that he sat behind the wheel paying attention to his driving; that the speed of the car just prior to reaching the intersection was about 70 miles per hour which was no faster than it had been earlier in the evening; and that her opinion as to Boucher's intoxication was based on his failure to answer certain questions which she asked of him while he was driving.

Walter Guziec testified that he was not intoxicated at the time of the accident; that he rode in the back seat of the car; that he did not know how fast Boucher was driving; that he heard no one say anything about the manner in which the car was being driven; and that in his opinion Boucher was not drunk at the time the accident occurred.

Dr. Elting Johnson testified that some four hours after the accident he detected the odor of alcohol on Boucher.

Boucher, who suffered a brain concussion in the accident, testified but had no recollection of events preceding the accident.

■ It thus appears that the opinions of the two witnesses who were in a position to observe the condition of Boucher prior to the accident were in direct conflict. The jury were not bound to accept the opinion of either as conclusive upon the question of Boucher's intoxication, but it was their special province to consider the same together with all the other facts pertaining to such question and determine therefrom where the truth lay. Matkins v. Fenorsky, 348 Ill. App. 125; Hudson v. Leverenz, 9 Ill.App.2d 96.

In deciding the weight to be accorded to Darlene Gunn's opinion that Boucher was intoxicated, the jury may well have considered the failure of this witness to give any basis for her conclusion. It was undoubtedly difficult for the jury to reconcile her statement that there was nothing in Boucher's manner different than normal with her opinion that he was under the influ-

34

ence of intoxicating liquor. The witness was not a casual observer of Boucher but was with him all evening and if his acts or speech evidenced lack of clearness of mind or of control of himself, it would seem that such condition would have been apparent to her. Failure of this witness to recall anything abnormal about Boucher's condition might well have been taken as corroborative of the opinion given by Walter Guziec.

█ As to whether all the evidence on the issue of the intoxication of Boucher including his admitted consumption of beer and the circumstances surrounding the accident preponderates in favor of plaintiff was for the jury to decide. While there was testimony that prior to the accident the car was being driven at 70 miles per hour, there was also evidence that it was under the driver's control and that no one in the car complained about the manner in which Boucher drove. The evidence also discloses that Boucher was driving on a country road with which he was not familiar; that it was either a mud or oiled road and that there were no signs or warnings as to its condition. These circumstances as shown by the evidence bear upon the question as to whether the manner in which Boucher drove tended to support plaintiff's charge of intoxication. However, the issue with which the jury was concerned was whether Boucher was intoxicated and not as to whether he was negligent in the operation of the automobile. We do not think that the evidence in the record as to the speed of the car alone compels a unanimity of opinion that Boucher was intoxicated.

█ It is only where the verdict of a jury is clearly and palpably against the manifest weight of the evidence that a reviewing court is justified in disturbing its finding on questions of fact. Citation of authority in support of this well-established doctrine is unnecessary.

So far as the direct testimony on the issue of intoxication is concerned, it is to be observed that the jury

35

saw and heard the witnesses and was in a far better position than is this court to judge their credibility and to determine the weight to be accorded their testimony.

In this case, we are unable to say that the findings of the jury on the disputed fact questions involved is so clearly erroneous as to warrant interference therewith.

The second point argued by plaintiff is that the trial court erred in allowing certain opinion evidence to be introduced over his objection thereto. The contention is made that the witness Guziec was permitted to express an opinion as to the nonintoxication of Boucher without a sufficient foundation being laid. There is no merit in this argument as the record shows the witness to have been in the company of Boucher for several hours before the accident and in a position to observe his actions and appearance. A witness may state the fact of intoxication, a fact which may be ascertained as is any other fact by personal observation. City of Aurora v. Hillman, 90 Ill. 61. Suppe v. Sako, 311 Ill. App. 459. For the same reason a witness may state that a person whom he has observed was not intoxicated.

Plaintiff further contends that the trial court erred in giving and refusing certain instructions. A general criticism directed at the instructions given on behalf of defendant is that an excessive number thereof reiterated the fact that the defendant was not guilty or plaintiff could not recover. It is also insisted that the proposition that plaintiff was required to prove his case by a preponderance of the evidence was so often reiterated in the instructions as to constitute an argument on the part of the court.

Our appellate courts in numerous cases have condemned the practice of giving an excessive number of instructions on a single proposition of law. The

soundness of such doctrine cannot be doubted. A jury hearing the trial court repeatedly tell it, that a party cannot recover might reasonably conclude that the court was expressing an opinion as to how the case should be decided. However, in the instant case we perceive no basis for the complaint that an inordinate number of instructions peremptory in form were given. Eight instructions tendered by the defendant were given, and in only two thereof were the jury told that under certain circumstances the plaintiff could not recover. The circumstances referred to in each of these two instructions were entirely different and neither can be said to be repetitious.

 Plaintiff complains of the court's refusal to give his tendered instructions numbers 2, 6 and 13. Plaintiff's instruction number 2 recited the provisions of Sec. 131, Chap. 43, Ill. Revised Statutes 1955 which prohibits the sale of alcoholic liquors to a minor. This instruction was properly refused as it is clearly not applicable in a Civil Action brought under the Dram Shop Act. Instruction number 13 would have informed the jury that plaintiff was not required to prove the intoxication of Boucher but that it would be sufficient for plaintiff to show that the beer consumed by him would result in his intoxication. In order for the plaintiff to recover it was incumbent upon him to show the intoxication of Boucher. Since this instruction did not correctly state the law, it was properly refused.

██ Instruction number 6 is an abbreviated statement of the Dram Shop Statute. Plaintiff's instruction 3, which was given, sets forth fully the Statute as it applied to the case. Instruction 6 was merely repetitious and was properly refused.

In support of the argument that the trial court erred in giving numerous peremptory instructions, plaintiff points to a number of cases in which the courts have held that under the facts and circumstances appearing

37

therein, the trial court erred in giving repetitious peremptory instructions.

Upon examination of all these cases we find in each a situation readily distinguishable from that presented on this appeal. Typical of the authorities cited is Randal v. Deka, 10 Ill.App.2d 10, where out of 19 instructions given for the defendant, 8 concluded "you should find the defendant not guilty" or similar language. In addition there were other instructions not peremptory in form but in which the jury were informed that under certain circumstances the plaintiff would not be entitled to recover. There were also 7 of the given instructions which referred to the plaintiff's contributory negligence. In its opinion, the Appellate Court said:

"A constant repetition by the court in its instructions to the jury of the peremptory demand that under certain circumstances they shall find for one party or the other may cause the jury to believe that the court has taken a definite stand upon the issues involved in the law suit. There is such a thing as a litigant being instructed out of court. Under the facts and circumstances in the case before us the court erred in giving the eight peremptory instructions which are objected to."

In Triolo v. Frisella, 3 Ill.App.2d 200, also cited by plaintiff, there were 37 instructions given on behalf of the defendant, 23 of which contained the language "you must find" the defendant not guilty or "plaintiff cannot recover."

In these cases and many others in harmony therewith, the vice condemned is the practice of attempting to pervert the function of instructions from that of serving as an aid to the jury in arriving at a just verdict to a means of impressing upon it by repetition the importance of certain propositions of law. Obviously, the employment of a court's instructions

38

for such purpose can only result in prejudice to the rights of one of the litigants.

In the instant case, it appears that the trial court in giving a minimum number of instructions on behalf of the defendant and in rejecting repetitious instructions tendered by plaintiff indicated a conscientious effort to advise the jury fairly as to the law applicable to the case.

Since we are of the opinion that the record herein discloses no reversible error, the judgment of the circuit court is affirmed.

Affirmed.