THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY SPENCE, Defendant-Appellant.

Second District No. 2—88—0851

Opinion filed September 25, 1989.

Donald J. Ramsell, of Ramsell & Associates, of Schaumburg, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Robert J. Huguelet, Jr., of Thomas F. Courtney & Associates, of Palos Heights (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Timothy Spence, was arrested on October 5, 1987, and charged with driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), driving with a blood-alcohol concentration of 0.10 or more (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)), and improper lane usage (Ill. Rev. Stat. 1987, ch. 95½, par. 11—709). A jury found defendant guilty of all charges, but judgment was entered only on the DUI conviction. The trial court sentenced

defendant to 12 months' probation, 70 hours of public service employment, and imposed a $500 fine. Defendant appeals, raising two issues: (1) whether it was error for the trial court not to allow defendant to impeach his own witness under Supreme Court Rule 238 (107 Ill. 2d R. 238) after the witness had been declared hostile; and (2) whether it was error for the trial court to preclude the impeachment of that witness pursuant to section 115–10.1 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115–10.1). Because defendant has not demonstrated that he manifestly suffered prejudice which would require reversal, we affirm.

We recite only those facts pertinent to the issue of the trial court's failure to allow defendant to impeach his witness. Prior to trial, on May 6, 1988, defendant filed a motion *in limine* which alleged that the breathalyzer examination should not be admitted into evidence because the examination was not conducted according to the standards promulgated by the Department of Public Health. The motion specifically alleged that the certified control reference sample was assayed falsely.

Dr. Daniel Brown, assistant chief forensic toxicologist for the bureau of forensic sciences of the Department of State Police, testified at the hearing on the motion *in limine*. Dr. Brown, whom defendant had subpoenaed, testified with respect to the results of an analysis of an alcohol reference solution to be used with an Intoximeter Model 3000, a breath-testing instrument. The results were recorded on a certificate of analysis prepared by the Department of Public Health. The mean value recorded for the Intoximeter Model 3000 was 0.102, while the gas chromatograph analysis had a recorded concentration of 0.1%. The doctor was asked to compare the mean value recorded for the breath-testing instrument with the concentration value recorded for the solution tested on the gas chromatograph. When asked whether the document was scientifically accurate, Dr. Brown replied that, if the document were correct, then either the gas chromatograph was improperly calibrated or the breath-test instrument was improperly calibrated. On cross-examination, Dr. Brown stated that he had not personally prepared the document, nor was he familiar with the way the actual test was conducted in the laboratory; he did not know the number of solutions that were examined to reach a "mean value."

Dr. Dietmar Grohlich, a supervisor in the toxicology laboratory of the Department of Public Health, was also asked to compare the two values recorded on the certificate of analysis. He opined that there were certain acceptable tolerances that might explain the discrepancies between the gas chromatograph results and the breath analysis

instrument reading. Under cross-examination, Dr. Grohlich admitted that the document, on its face, did not accurately reflect the actual gas chromatograph analysis. Dr. Grohlich ultimately concluded that the figure used for the chromatograph concentration was merely an "equivalent" value and that it would have been more accurate to place the actual gas chromatograph results on the certificate. However, he insisted that the concentration "equivalent" in no way invalidated the document, because the alcohol solution that was used was still correctly prepared. The trial court denied defendant's motion *in limine*.

At trial, Dr. Brown was called to testify as a defense witness. Dr. Brown stated that he recognized that the same certificate of analysis was a type of document that he was familiar with, but he stated that he was not involved in its preparation. He said that he had no knowledge of the actual solution prepared in this case. Although he was familiar with several breath-testing instruments, he was not familiar with the model in question, the Intoximeter Model 3000, and he could only assume that the Intoximeter ran on the same principle as the other machines.

The defendant moved to examine Dr. Brown as a hostile witness and to question him on his prior inconsistent testimony at the hearing. The State did not object to his being declared a hostile witness but argued that he could not be impeached under Rule 238 because he was not an occurrence witness.

The trial court ruled that Dr. Brown was a hostile witness and that defense counsel could cross-examine him, but impeachment would not be allowed because Dr. Brown was not an occurrence witness. The court apparently relied on the comments found in the Smith-Hurd Illinois Annotated Statutes (Ill. Ann. Stat., ch. 110A, par. 238, Committee Comments, at 521 (Smith-Hurd 1985)).

Using the Intoxilyzer 4011 as an example of a machine that operates on an infrared absorption principle, Dr. Brown was asked to make certain assumptions and to hypothesize regarding the corresponding values between the breath-testing instrument result and the gas chromatograph result that would be expected to appear on the certificate of analysis. Dr. Brown acknowledged that a recorded value of 0.102 on the breath-testing instrument would not correspond to a chromatograph concentration analysis of 0.10 if both instruments were properly calibrated. If the values were the same, it would mean that one of the instruments was inaccurate.

On cross-examination by the State, Dr. Brown said that, based on the information he had before him, he could not draw a conclusion as

to what the certificate of analysis actually represented. He did not sign it; he did not prepare it; he did not handle the solutions; and he had no personal knowledge of it.

Our inquiry initially focuses on whether the trial court erred in prohibiting defendant from impeaching his own hostile witness, Dr. Brown, with a prior inconsistent statement even though he was not an occurrence witness. In the pretrial hearing on the motion *in limine*, Dr. Brown, after comparing the values on the certificate of analysis, opined that, if the certificate were scientifically accurate, then either the chromatograph was improperly calibrated or the breath-test instrument was improperly calibrated. Nevertheless, he acknowledged that he had not personally prepared the document, nor did he know how the testing was actually done in this particular instance. Dr. Brown testified, in hypothetical fashion, that there was a possibility that one of the two instruments was improperly calibrated. He ultimately concluded that he could not say what the certificate of analysis actually represented.

██ █ The trial court should have allowed defendant to impeach Dr. Brown's testimony at trial with Brown's earlier statement at the hearing. It was error for the trial court to prevent defendant from bringing earlier testimony to the attention of the jury. Supreme Court Rule 238, amended and adopted in April 1982, provides that the "credibility of a witness may be attacked by any party, including the party calling him." (107 Ill. 2d R. 238.) Prior to the amendment, a party had to demonstrate that he was surprised by the witness' testimony, and the rule applied only to occurrence witnesses. The new rule liberalizes a party's ability to impeach his own witness, and the rule has eliminated any reference to occurrence witnesses. (*People v. Bolden* (1987), 152 Ill. App. 3d 631, 637-38, 504 N.E.2d 835.) The right to impeach a witness with prior inconsistent statements is not unlimited; but where the testimony is damaging, a party can impeach his own witness without having to demonstrate surprise. (*People v. Amato* (1984), 128 Ill. App. 3d 985, 986-87, 471 N.E.2d 928.) Notwithstanding the comments in the Smith-Hurd Annotated Statutes (Ill. Ann. Stat., ch. 110A, par. 238, Committee Comments, at 521 (Smith-Hurd 1985)), we believe that the rule is no longer limited to occurrence witnesses. See *Bolden*, 152 Ill. App. 3d at 637-38, 504 N.E.2d at 840.

██ Having determined that it was error for the trial court to prevent defendant from impeaching his witness, we must next determine whether this constitutes reversible error. The exclusion of evidence designed to impeach a witness or affect his credibility will constitute

reversible error where such exclusion is shown to have a prejudicial effect. (*People v. Anderson* (1977), 51 Ill. App. 3d 621, 623, 366 N.E.2d 900; *People v. Boyd* (1974), 22 Ill. App. 3d 1010, 318 N.E.2d 212; see also *People v. Crosser* (1983), 117 Ill. App. 3d 24, 30, 452 N.E.2d 857.) Where there is sufficient competent evidence establishing a defendant's guilt beyond a reasonable doubt, and defendant cannot show that the error was the basis of the jury's verdict, the error is harmless, and reversal is not required. (*People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1083, 502 N.E.2d 304; *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 505, 448 N.E.2d 620.) A court of review will not presume that prejudice exists. (*Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 779, 484 N.E.2d 1237.) It is defendant's burden to demonstrate prejudice and to establish that there was a reasonable possibility that the error, in light of all the evidence, was a material factor in his conviction. (*People v. Johnson*, 150 Ill. App. 3d at 1083, 502 N.E.2d at 309; *People v. Grant* (1979), 69 Ill. App. 3d 940, 945, 387 N.E.2d 1087.) A defendant's attempt to raise a claim of prejudice must be founded on more than mere conjecture. *People v. Velez* (1984), 123 Ill. App. 3d 210, 219, 462 N.E.2d 746.

■ In this case, the error does not require reversal for the reasons that follow. First, it is apparent from our review of the record that defendant was allowed to inquire extensively as to Dr. Brown's opinion concerning whether the certificate of analysis could have been erroneous. The defendant effectively placed in doubt the accuracy of that document and implied that the breath analysis was at least questionable. By means of leading questions, defendant accomplished indirectly what he could not accomplish by direct impeachment with prior inconsistent statements. We find no manifest prejudice here as a result of the limitation on his ability to cross-examine Dr. Brown. See, e.g., *People v. Dowdy* (1986), 140 Ill. App. 3d 631, 636, 488 N.E.2d 1326.

Second, the trial court entered a conviction and sentence only on the DUI charge, and no judgment was entered on the charge of having a blood-alcohol concentration of 0.10 or more. Where the jury is properly instructed, it can be reasonably assumed that the jury considered the evidence sustaining the DUI charge independently from the evidence supporting the charge related to the blood-alcohol concentration. (See *People v. Foley* (1987), 152 Ill. App. 3d 354, 356-57, 504 N.E.2d 254.) Defendant presents no evidence of jury confusion in the record, nor does he complain of the jury instructions given. We will therefore not speculate as to the rationale for the jury's verdict.

Third, defendant presents an incomplete record which prevents us from determining whether the remaining evidence was so overwhelming that it would have supported the convictions despite the claimed error. (See *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, 429 N.E.2d 526; *People v. Saulsburry* (1989), 178 Ill. App. 3d 857, 863, 533 N.E.2d 1154.) Instead, we have had to limit our inquiry, focusing only on the error itself to see if it might have reasonably contributed to the conviction. As a reviewing court, we are not required to isolate the particular limitation on cross-examination to determine whether reversible error occurred. Rather, we will review the entire record to see if the jury was made aware of adequate factors concerning the relevant areas of impeachment. *People v. Harris* (1988), 123 Ill. 2d 113, 145, 526 N.E.2d 335.

The record does not disclose the testimony given by the defendant or by the arresting officer, and any doubt arising from the incompleteness of the record will be resolved against appellant. (*People v. Anderson* (1977), 51 Ill. App. 3d 621, 623, 366 N.E.2d 900.) Additionally, we are satisfied that, based on the record provided, no reasonable doubt exists that the restriction on defendant's cross-examination of Dr. Brown could have influenced the jury's determination of guilt. We conclude that the error was harmless. (*People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 696-97, 402 N.E.2d 915.) Accordingly, we affirm the judgment as to the DUI conviction. In view of our determination that it was harmless error for the trial court to preclude defendant from impeaching Dr. Brown under Rule 238, we need not address his other argument that it was also error to do so pursuant to section 115—10.1 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1).

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.