THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN BOSHEARS, Defendant-Appellant.

Fifth District   No. 5—91—0254

Opinion filed May 8, 1992.—Rehearing denied June 16, 1992.

Alan C. Downen, of McLeansboro, for appellant.

Bob Roth, State's Attorney, of Albion (Kenneth R. Boyle, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, John J. Boshears, appeals from an order of supervision entered by the circuit court of Edwards County on April 5, 1991, upon jury verdicts of guilty of driving under the influence of alcohol (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)), and driving a motor vehicle while the alcohol concentration in his blood or breath was .10% or more. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1).) Defendant raises four issues on appeal: (1) whether a proper foundation was established to admit the results of the breath test where the defendant was prevented from viewing the visual display of the test results until the test was completed; (2) whether a proper foundation was established to admit the results of the breath test where the breathalyzer operator testified that he was licensed to perform the test but his license was not admitted into evidence; (3) whether the trial court erred in denying defendant a new trial where the arresting police officer and another police officer testified that, based upon their personal observations of the defendant at the time of his arrest, in their opinions defendant's blood-alcohol content was .10 or above; and (4) whether the trial court erred in excluding defendant's proffered evidence that an additional charge was filed against defendant after he pleaded not guilty and demanded a jury trial, offered to show the bias or motive of the State. We set forth the facts only as they are necessary to resolve these issues.

On the evening of March 17, 1990, defendant was stopped at a police roadside safety check (roadblock) in the City of Albion. He was then and there charged by citation with the offense of driving under the influence of alcohol in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)). He was taken into custody and submitted to a breath test of his blood-alcohol concentration. During the administration of this test and while defendant was blowing into the machine, Illinois State Police Trooper Phil Goodman, who administered the test, covered with a card the visual display of the test results so that defendant could not view the display while the test was in progress. Upon completion of the test, defendant was allowed to view the visual display of the test results, which showed defendant's blood-alcohol concentration to be .17.

On May 29, 1990, defendant was arraigned. He pleaded not guilty and demanded a jury trial. Subsequent to this, on July 17, 1990, an amended complaint was filed against the defendant charging him with driving a motor vehicle while under the influence of alcohol in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)), and operating a motor vehicle with an alcohol concentration in excess of .10% in violation of section 11—501(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1)). The first count of the amended complaint was identical to the charge contained in the citation. The second count of the amended complaint constituted a new charge.

The cause came on for jury trial on October 23, 1990. Defendant was found guilty by the jury on both counts. On April 5, 1991, the trial court entered an order for supervision placing the defendant on supervision for a period of 18 months and ordering him to pay a fine of $750. Defendant filed his notice of appeal that same date.

Defendant's first argument on appeal is that a proper foundation was not established for admission of the results of the breath test because defendant was not permitted to view the visual display of the test results during administration of the test, but was only allowed to view the visual display of the test results upon completion of the test. Illinois State Police Trooper Phil Goodman, who administered the breath test to defendant, testified that while defendant was actually taking the test, Goodman covered with a card the visual display of the test results so that defendant could not view the display while the test was in progress. Goodman did this because very often when defendants see the results approach the legal limit of .10, they will stop blowing into the machine and will not finish the test. By covering the display, neither the defendant nor Goodman can see the results until the test is completed. This assures an accurate, completed test. When defendant completed the test, he was allowed to view the visual display of the results.

Defendant contends that the test was not performed in accordance with the uniform standards adopted by the Illinois Department of Public Health and was therefore inadmissible. Section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2) provides that the results of breath tests are admissible in criminal trials for driving under the influence of alcohol or driving with a blood-alcohol concentration in excess of .10 provided the test is performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police. Section 510.40 of those standards provides:

"Any breath testing instrument to be approved must automatically display the test results visually to the arrested person and provide for an automatic printed record of the reading of the testing device made immediately prior to the recording of the tested person." (Illinois Department of Public Health, Standards and Procedures for Testing for Alcohol and/or Other Drugs By Breath, Blood & Urine Analysis, §510.40 (as revised December 1, 1988) (hereinafter Standards).)

Section 510.60 of those Standards provides that, "[b]efore a breath analysis, a room-air analysis must be conducted, the results of which must be less than 0.01 reading." That section also provides that a breath test shall consist of only one breath analysis. Standards, §510.60.

Defendant argues that, because he was not allowed to view the visual display of the test results during the progress of the test, the test was not conducted in accordance with section 510.40 of the Standards, which requires that the instrument visually display the test results to the defendant. Defendant further argues that it is also "evident" that the results of the room-air analysis were not visually displayed to the defendant after the sample was taken because the machine is reset before the breath test is administered and the visual display of the room-air analysis is lost. Because Trooper Goodman had covered the visual display, defendant argues, defendant could not have viewed the result of the room-air analysis. Defendant argues that this also violates section 510.40 of the Standards. Defendant concludes that, because the breath test was not administered in accordance with the Standards, the results were inadmissible and the trial court erred in allowing it into evidence.

■ We start by addressing defendant's argument that the Standards were violated because it is "evident" that defendant was not allowed to view the results of the room-air analysis because Trooper Goodman had covered the visual display. We do not find this to be "evident" at all. There is absolutely no evidence in the record to indicate, or from which to infer, that Trooper Goodman covered the visual display of the room-air analysis. Goodman testified that he covered the visual display while defendant was actually taking the test so that defendant would not know if the results were approaching .10 and discontinue the test. There was no reason for Goodman to cover the visual display during the room-air analysis and there is no evidence from which to conclude that he did so. A reviewing court cannot presume the existence of error which is not affirmatively shown of record. (*People v. Harrell* (1982), 104 Ill. App. 3d 138, 143, 432 N.E.2d

1163, 1167.) All reasonable presumptions are in favor of the action of the trial court, and the burden is on the appellant to overcome such presumptions by affirmatively showing the errors charged. (*People v. Henderson* (1985), 136 Ill. App. 3d 1041, 1045, 483 N.E.2d 1068, 1071.) Thus, we cannot presume that the visual display of the room-air analysis was concealed from defendant and must resolve the record's silence as to this point against the defendant. *Harrell*, 104 Ill. App. 3d at 143, 432 N.E.2d at 1167.

In any event, we find no requirement in the Standards that a defendant be allowed to view the results of the room-air analysis, which is conducted before the actual breath test is administered. We think a plain reading of section 510.40 of the Standards indicates that only the results of the breath test itself need be visually displayed to the defendant. The first sentence of section 510.40(a) provides that, in order to be approved, a breath testing instrument must automatically display the test results and provide for an automatic printed test record. The second sentence of that paragraph provides that each such printed test record must also contain the reading of the room-air analysis made immediately prior to the recording of the tested person. We think that the inclusion of the second sentence in this paragraph makes clear that the first sentence of the paragraph refers only to the actual breath test and not to the room-air analysis. The paragraph clearly makes a distinction between the breath test itself and the room-air analysis. Where the language of a statute is clear on its face, its meaning should be given effect without resort to supplementary principles of statutory construction. (*People v. Singleton* (1984), 103 Ill. 2d 339, 341, 469 N.E.2d 200, 202.) Thus, section 510.40 requires only that the results of the actual breath test be visually displayed to the defendant.

■ We turn now to defendant's contention that the test was not administered in accordance with the Standards because he was not permitted to see the visual display during the progress of his breath test, as well as at its conclusion. Again, we find nothing in the Standards from which to conclude that they require a visual display of the progress of the test. The plain language of section 510.40 requires only that the *results* of the test be visually displayed to the defendant. A reviewing court should not create new rights not suggested by statutory language and has no right to read into a statute words that are not found there either by express inclusion or by fair implication. (*American Ambassador Casualty Co. v. City of Chicago* (1990), 205 Ill. App. 3d 879, 884, 563 N.E.2d 882, 886.) The Standards require only that a breath testing instrument automatically display visually to

the person being tested the results of the test. Defendant does not argue that the breath testing instrument did not automatically display, or that he was not permitted to view, the results of his breath test. The requirements of the Standards were complied with in this regard, and the trial court did not err in finding that the State had established a proper foundation for admission of the test results in this regard.

Defendant's second argument on appeal also relates to the admissibility of his breath test results. Defendant argues that a proper foundation was not established for admission of the breath test results because, although Trooper Goodman, who administered the test, testified that he was a licensed operator, the license itself was not admitted into evidence.

Section 11–501.2 of the Illinois Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11–501.2) provides that chemical analysis of a person's breath to determine the concentration of alcohol is admissible in a criminal prosecution for driving under the influence of alcohol or driving a motor vehicle with a blood-alcohol concentration in excess of .10 provided the chemical analysis is conducted in accordance with standards promulgated by the Department of Public Health *by an individual possessing a valid permit issued by that Department for this purpose.*

At trial, Trooper Goodman testified that at the time he administered the breath test to defendant, he held a current license to operate a breath analysis machine. Defendant objected to this evidence on the basis that the trooper's testimony was not the best evidence. The trial court overruled defendant's objection. Later, defendant filed a motion to suppress the results of the breath test for the reason, among others, that the license of the breath testing machine operator had not been admitted into evidence. The court denied the motion to suppress, stating:

> "I agree that the operator's license was not introduced into evidence, but I will not follow the Louisiana case [*State v. Batiste* (La. 1976), 327 So. 2d 420]. I will accept the fact that the officer testified that he was licensed and there is no evidence to the contrary."

Defendant cites cases from other jurisdictions in support of his argument that the license itself is the best evidence of the breath testing machine operator's authority and competence to operate the machine and its admission is required to establish a proper foundation to admit the results of the breath test into evidence. (*State v. Caviness* (1970), 7 N.C. App. 541, 544-45, 173 S.E.2d 12, 14-15; *State v. Batiste*

(La. 1976), 327 So. 2d 420, 422.) These cases do not constitute binding authority on us, especially in the face of Illinois cases holding to the contrary. (*People v. Chandler* (1980), 88 Ill. App. 3d 644, 653, 411 N.E.2d 283, 291.) Defendant acknowledges the existence of three Illinois cases which have addressed this issue and reached a conclusion contrary to defendant's position, but argues that the reasoning of these cases is flawed and should not be followed by this court.

*People v. Pelc* (1988), 177 Ill. App. 3d 737, 532 N.E.2d 552, was an appeal from the denial of the defendant's petition to rescind the suspension of his driver's license based upon his arrest for driving under the influence of alcohol. Defendant argued on appeal that the State had failed to prove that the operator of the breathalyzer machine had been licensed as required by statute. The operator, a police officer, testified that he held a valid license, issued by the Department of Health, to operate a breath test machine on the date defendant was arrested and tested. Defendant objected to the operator's testimony on the basis of the best evidence, or original writing, rule. A copy of the operator's license was admitted into evidence but the operator's last name was misspelled on the license. On appeal, defendant argued that, because the best evidence of the operator's authority to conduct breathalyzer tests was his license, his oral testimony was inadmissible and, because the name of the operator was misspelled on the license, the State had failed to prove that the operator was licensed at the time defendant was tested. The fourth district of our court stated:

> "Defendant misunderstands the purpose of the best evidence rule. The best evidence rule applies only when the contents or terms of a writing are in issue and must be established. ***
>
> Here, the issue was not the contents of the license, but whether [the operator] was qualified and authorized to conduct breathalyzer examinations. His qualifications and authority have an existence independent of the writing, even though the license is evidence of the qualifications and authority. Therefore, the best evidence rule does not apply and [the operator's] testimony was properly admitted." 177 Ill. App. 3d at 742-43, 532 N.E.2d at 555-56.

In *People v. Caruso* (1990), 201 Ill. App. 3d 930, 559 N.E.2d 545, defendant appealed from his conviction for driving with a blood-alcohol concentration in excess of .10 arguing, among other things, that the State had failed to establish a proper foundation for admission of the results of his breath test because it had failed to prove that the

operator of the breath testing instrument was properly licensed. The second district of our court held:

> "Proof of certification, unless there is evidence to show that the certification is not valid, is sufficient. In this case, the officer testified that he had been certified for 16 years and was presently certified when he administered the test. The officer's testimony is sufficient proof of his certification." 201 Ill. App. 3d at 940-41, 559 N.E.2d at 552.

Finally, in *People v. Keith* (1990), 206 Ill. App. 3d 414, 564 N.E.2d 901, the third district of our court adopted the reasoning and holding of *Caruso* and held that the testimony of an operator of a breath testing instrument that he was properly licensed at the time the test was administered is sufficient to establish a foundation for admission of the breath test results. The court stated, "[t]he State can make this showing by introducing the officer's license into evidence or, as in *Caruso*, the officer can testify he was licensed on the day he administered the test." 206 Ill. App. 3d at 421, 564 N.E.2d at 905.

Defendant urges us not to follow these cases, pointing out that the fifth district has never addressed this issue. Defendant argues that the reasoning of these cases is flawed. Defendant argues that these cases are distinguishable and that they impermissibly shift to defendant the burden of proving that the operator of the breath testing machine was not properly licensed. Defendant also argues that it is evident that the intent of the statute is to require the license itself as evidence for purposes of establishing a proper foundation. Finally, defendant argues that the best evidence rule requires that the license itself be admitted into evidence.

■ While the *Pelc, Keith*, and *Caruso* cases are distinguishable in some respects from the case at bar, they are sufficiently similar to be considered as persuasive authority. Further, these cases do not impermissibly shift to the defendant the burden of proving that the operator was not licensed. Instead, they require the State to present some evidence in its case in chief that the operator was properly licensed. This evidence may take the form of testimony of the operator or admission of the license itself. As in every case, the defendant may rebut this evidence by proof that the operator was not properly licensed. However, the initial and ultimate burden of establishing a proper foundation for admission of the breath test results remains on the State.

■ Furthermore, the best evidence rule or original writing rule does not apply to evidence of the breath testing machine operator's licensure. The original writing rule states a preference for the produc-

tion of the original of a writing when the contents of the writing are sought to be proved. (*Jones v. Consolidation Coal Co.* (1988), 174 Ill. App. 3d 38, 42, 528 N.E.2d 33, 36.) The rule does not apply where a party seeks to prove a fact which has an existence independent of any writing, even though the fact might have been reduced to, or is evidenced by, a writing. (*Jones*, 174 Ill. App. 3d at 42, 528 N.E.2d at 36.) The written license issued by the Department of Public Health is merely evidence of a fact which has an existence independent of that writing, that is that the individual so licensed has the authority and competence to operate a breath testing machine. It is not the content of the written license itself which is sought to be proved, but the fact evidenced by that license that the individual has authority and competence to operate a breath testing machine. (*Pelc*, 177 Ill. App. 3d at 742-43, 532 N.E.2d at 556.) Thus, the original writing rule does not require admission of the actual written license itself in order to prove that the operator is, in fact, licensed. See *People ex rel. Illinois State Dental Society v. Vinci* (1976), 35 Ill. App. 3d 474, 478, 342 N.E.2d 206, 209.

Finally, we find nothing in the statute to indicate legislative intent to require admission of the license itself as the only acceptable proof of a proper foundation for admission of breath test results. The statute only requires that the breath test be administered by an individual possessing a valid license. Defendant argues that the definition of "license" contained in section 510.20 of the Standards evidences an intent to require admission of the actual license as the only acceptable proof of the operator's licensure. That section defines "license" as "evidence issued by the Department to an individual as proof of his authority and competence to operate a breath analysis instrument." (Standards, §510.20.) We find no indication in this definition of any such intent. Instead, we find that this definition supports our finding that the original writing rule does not apply in this instance.

The State introduced competent proof of Trooper Goodman's authority and competence to operate a breath testing instrument in the form of Goodman's testimony that he was properly licensed on the date the test in question was administered. The court did not err in finding a proper foundation for admission of the results of that breath test and allowing admission.

Defendant's third argument on appeal is that the trial court erred in failing to grant defendant a new trial where two police officers repeatedly testified that, in their opinions and based upon their personal observations of the defendant at the time of his arrest, defendant's blood-alcohol concentration was in excess of .10. Defendant objected

each time the officers so testified, and each time, defendant's objection was sustained, the testimony stricken and on several occasions the jury was instructed to disregard the testimony. Furthermore, the jury was instructed immediately prior to its deliberations to disregard testimony which had been stricken.

While a witness may testify as to his opinion of whether an individual was intoxicated (*Vandeveer v. Preston* (1957), 13 Ill. App. 2d 29, 36, 140 N.E.2d 521, 524), the only method by which evidence of a defendant's blood-alcohol concentration may be determined is by analysis of the person's blood, urine, breath or other bodily substance in conformity with section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2). (*People v. Dakuras* (1988), 172 Ill. App. 3d 865, 869, 527 N.E.2d 163, 166.) Evidence of a defendant's blood-alcohol concentration based on anything other than such chemical analysis is inadmissible in a criminal prosecution for violation of section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501). (*Dakuras*, 172 Ill. App. 3d at 869-70, 527 N.E.2d at 166.) The court in *Dakuras* explained as follows:

"[W]e read sections 11—501.2(a) and 11—501.2(b)(4) to allow the introduction of evidence in a section 11—501(a)(2) prosecution which would be relevant to whether a person is under the influence of alcohol, such as field sobriety tests and opinions on intoxication, but if that evidence consists of a defendant's blood-alcohol concentration, then such evidence may be based only on the statutorily prescribed analysis of the defendant's bodily substances." (172 Ill. App. 3d at 870, 527 N.E.2d at 166.)

The court further held that its holding would apply to prosecutions under both section 11—502(a)(1) (driving with a blood-alcohol concentration in excess of .10) and section 11—501(a)(2) (driving while under the influence of alcohol). 172 Ill. App. 3d at 870, 527 N.E.2d at 167.

■ Thus, it was improper for the police officers to testify as to their personal opinions of the defendant's blood-alcohol concentration. Defendant argues that this evidence, although stricken, prejudiced his case because the evidence was closely balanced and the jury deliberations so lengthy. The record indicates the jury deliberated 6 hours and 40 minutes before reaching a verdict, indicating, argues defendant, that it had a difficult time resolving the issue of defendant's guilt. Defendant argues that due to the strength of the defendant's case and the difficulty the jury had in arriving at a verdict, any evidence the jury heard which was improper could well have been a factor in persuading it of the defendant's guilt. The error, defendant argues,

could not have been cured by the trial court's admonitions to disregard the stricken testimony.

The State counters that any error was cured when the trial court sustained defendant's objections, ordered the improper testimony stricken, and instructed the jury to disregard testimony which had been stricken, and that, in any event, any error was harmless. Therefore, defendant was not entitled to a new trial.

The mere occurrence of improper remarks or testimony does not itself mandate reversal. (*People v. Whitfield* (1986), 140 Ill. App. 3d 433, 440, 488 N.E.2d 1087, 1092.) Where a timely objection is made at trial, the court can, by sustaining the objection or instructing the jury to disregard the answer, usually correct the error. (*Whitfield*, 140 Ill. App. 3d at 440, 488 N.E.2d at 1092.) Where error does result, defendant's prompt and timely objection and an appropriate admonition by the court to the jury will normally render the error harmless. (*Whitfield*, 140 Ill. App. 3d at 440-41, 488 N.E.2d at 1092.) To warrant reversal, the challenged testimony must be shown to have caused substantial prejudice, constituted a material factor in defendant's conviction, or produced a judgment different from that which would have resulted absent the alleged impropriety. (*Whitfield*, 140 Ill. App. 3d at 441, 488 N.E.2d at 1092.) It is presumed that juries will follow their instructions unless the court can conclude that it did not or could not follow the instructions and there is a strong likelihood that the effect of the evidence would be devastating to the defendant. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 192-93, 552 N.E.2d 726, 741.) We find nothing in this record to lead us to conclude that the jury did not or could not have followed the instruction of the trial court to disregard the improper testimony.

In any event, the improper testimony, even if considered by the jury, could not have prejudiced defendant's case. In order to constitute reversible error, the improper testimony must have caused substantial prejudice, constituted a material factor in defendant's conviction, or produced a judgment different from that which would have resulted absent the impropriety. (*Whitfield*, 140 Ill. App. 3d at 441, 488 N.E.2d at 1092.) The fact that defendant's blood-alcohol concentration was in excess of .10 was properly established through admission of the results of defendant's breath test. Error in the admission of evidence is harmless if the same facts are strongly established by other competent evidence. (*People v. Brouder* (1988), 168 Ill. App. 3d 938, 945, 523 N.E.2d 100, 104.) Furthermore, we disagree with defendant's characterizations of the evidence as closely balanced and the jury deliberations as lengthy. Without setting forth all of the evi-

dence of defendant's intoxication, we simply find that it was sufficiently strong that the improper testimony of the officers could not have substantially prejudiced defendant's case, constituted a material factor in defendant's conviction, or produced a judgment different from that which would have resulted absent the impropriety.

Defendant compares this case to *People v. Larry* (1991), 218 Ill. App. 3d 658, 578 N.E.2d 1069. In *Larry*, the prosecutor intentionally and repeatedly elicited hearsay evidence over six objections which were sustained and in defiance of the trial court's admonitions. The prosecutor also argued this inadmissible evidence in his closing argument. The appellate court found the prosecutor's conduct to be egregious and that the cumulative effect of the repeated questions was to establish in the minds of the jury a fact which was highly damaging to the defendant. The appellate court found that the fact that the trial court sustained the objections was not enough to shield the jury from the implications of the questions. The court held, "[w]here, as here, prosecutors defy the trial court's rulings by repeating the same questions after objections have been sustained, the court's rulings can have no salutary effect." (218 Ill. App. 3d at 663, 578 N.E.2d at 1072.) Furthermore, the appellate court found that the improper evidence was highly prejudicial to defendant.

In the instant case, the record clearly shows that the prosecutor did not act intentionally in eliciting the improper testimony. Instead, the testimony was elicited as a result of inartfully drafted questions and the officers' misunderstanding of those questions. Furthermore, we have already held that the improper testimony was not prejudicial to defendant. The instant case is sufficiently different on its facts to distinguish it from *Larry*.

Defendant's final argument on appeal is that the trial court erred in precluding him from presenting to the jury evidence that, after he pleaded not guilty and demanded a jury trial, the State filed the additional charge of driving with a blood-alcohol concentration in excess of .10. Defendant sought to introduce this evidence through the testimony of Trooper Goodman, the arresting officer, that, on the evening of defendant's arrest, only one charge of driving under the influence of alcohol was filed against defendant. After defendant pleaded not guilty and demanded a jury trial, Trooper Goodman signed an amended complaint charging defendant with the additional charge of driving with a blood-alcohol concentration in excess of .10. Defendant argued that the evidence was relevant to show the improper motive or bias of the State.

The court found that the evidence was not relevant to the question of defendant's guilt or innocence and did not serve to impeach the testimony of the arresting officer by showing any bias or lack of reliability in the testimony he presented in the State's case in chief. Defendant then stated that he was not offering the evidence for impeachment purposes. The court excluded the evidence on the basis that it was not relevant.

On appeal, defendant concedes that the State has the right to amend its charge against defendant or add additional charges after the defendant's arrest and prior to trial. However, defendant argues that he should have had an opportunity to present such facts to the jury in order to question the State's motive. Defendant argues that the widest latitude should be allowed the defendant for the purpose of establishing bias, and that the partiality of a witness is subject to exploration at trial and is always relevant to discredit the witness and affect the weight of his testimony. Defendant argues that the evidence which was excluded could have been used by the jury to weigh the credibility of Trooper Goodman, the arresting officer. Because the evidence was closely balanced and the jury deliberation lengthy, the error was prejudicial.

■ We think it is clear that the proffered evidence was not relevant to the issue of defendant's guilt or innocence of the crimes with which he was charged. Evidence is relevant when it tends to prove a fact in controversy or renders a matter in issue more or less probable. (*People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1073, 401 N.E.2d 1069, 1074.) The fact that the additional charge was filed against defendant subsequent to his pleading not guilty and demanding a jury trial does not reflect in any way on the question of defendant's guilt or innocence. It does not tend to prove defendant's guilt or innocence, or make defendant's guilt or innocence more or less probable. A trial court may properly refuse evidence which will serve no useful purpose in the trial or which is incompetent to prove an issue. *McElroy*, 81 Ill. App. 3d at 1074, 401 N.E.2d at 1074.

We further find that the evidence was not admissible to prove improper motive on the part of the State because it does not relate to any material issue in the case. In order to be relevant, evidence must relate to a fact that is of consequence to the determination of the action. (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, 297.) In other words, it must be material. Evidence of the State's motive in bringing a criminal charge is immaterial in the prosecution of that charge. Such evidence does not relate to a fact that is of consequence to the determination of the action, even in a collateral or cir-

cumstantial way. We distinguish evidence of the State's motive or bias in bringing a charge from evidence of a testifying witness' motive or bias. The latter type of evidence does relate to a fact that is of consequence to a determination of the action and is material in that it bears circumstantially on the evaluation of the probative value to be given to other evidence in the case. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.1, at 127 (5th ed. 1990).) The proffered evidence was not admissible to prove the State's motive or bias in bringing the charge.

Finally, we find that the evidence was not relevant to prove the bias or interest of the testifying officer. It is well settled that, when impeaching a witness by showing bias, interest or motive, the evidence used must give rise to the inference that the witness has something to gain or lose by his testimony. (*People v. Harris* (1988), 123 Ill. 2d 113, 147, 526 N.E.2d 335, 349.) Defendant presents no evidence or argument as to anything Trooper Goodman might have hoped to gain or lose by his testimony, nor are we able to discern any such evidence from the record. Defendant never indicates the basis or nature of the alleged bias or interest. Evidence that an additional charge was filed against defendant subsequent to his not guilty plea and jury demand does not call into question Trooper Goodman's credibility and does not demonstrate any bias, interest or improper motive on his part. Thus, the evidence was properly excluded.

Even assuming that exclusion of the evidence was error, we find that it was harmless. The exclusion of evidence designed to impeach a witness or affect his credibility will constitute reversible error where such exclusion is shown to have a prejudicial effect. (*People v. Spence* (1989), 188 Ill. App. 3d 761, 765-66, 544 N.E.2d 831, 835.) Where there is sufficient competent evidence establishing a defendant's guilt beyond a reasonable doubt, and defendant cannot show that the error was the basis of the jury's verdict, the error is harmless, and reversal is not required. (*Spence*, 188 Ill. App. 3d at 766, 544 N.E.2d at 835.) It is defendant's burden to demonstrate prejudice and to establish that there was a reasonable possibility that the error, in light of all the evidence, was a material factor in his conviction, and a claim of prejudice must be founded on more than mere conjecture. (*Spence*, 188 Ill. App. 3d at 766, 544 N.E.2d at 835.) To support his claim of prejudice in the exclusion of the evidence, defendant argues only that the evidence was closely balanced and the jury deliberations lengthy. Furthermore, defendant never indicates in his brief or in the trial record the basis or nature of Trooper Goodman's alleged bias or interest and, indeed, the record contains no evidence of any such bias or

interest. Any claim of prejudice from exclusion of the evidence is mere conjecture.

For the foregoing reasons, the judgment of the circuit court of Edwards County is affirmed.

Affirmed.

GOLDENHERSH, P.J., and HARRISON, J., concur.